In the Matter of the OPENING OF ELEVENTH AVENUE.

Where, in proceedings to acquire lands for a street in the city of New York, an award is made of the full value of the lands to "unknown owners," and it appears by the commissioners' report that the award was intended for the benefit of all parties interested, the owner of the fee is not entitled to the whole award, where a perpetual easement in the land is vested in another person, but the latter is entitled to the value of his easement.
*In re Department of Parks* (73 N. Y. 560), distinguished.

H., being the owner of certain lands in the city of New York, executed con-
veyances and mortgages of various parcels, referring therein to certain
streets and avenues which had not then been laid out by legal authority,
and the parcels conveyed and mortgaged were described as bounded by
said streets and avenues. *Held*, that the conveyances, although not
amounting to a dedication to the public of the land embraced in the spe-
cified streets and avenues, or constituting them public highways, created
an easement in the grantees, which, as between them and him, entitled
them to have the land left open as streets, for the benefit of their lots.

In subsequent proceedings to open said streets and avenues, the commis-
sioners appointed to award compensation for the land to be taken, in the
first place awarded nominal compensation only, they treating the land as
having been dedicated to public use. The court refused to confirm their
report, and sent it back to be corrected by awarding just compensation.
*Held*, that this was not an adjudication that no easement had been parted
with by the owner, but the only right adjudicated upon was that of the
city; and it was not, therefore, a bar to a claim of such an easement by
the owner of one of the lots so conveyed.

The amended report awarded the full value of the land to " unknown
owners." It was stated therein that the award was for the benefit of
" the owners, proprietors and parties interested in respect to the whole
estate and interest of whomsoever may be entitled unto or interested
in " the land. *Held*, that the rights and interests of all the parties in-
terested were to be considered as having been taken by the city; that
the award was equitably to be apportioned among them in proportion to
their interests ; and that, therefore, the owners of the easements were
entitled to share in the award.

Also, *held*, that the owners of the easement were not debarred from parti-
cipating, by the fact that they were not deprived of the easement, as the
compensation allowed was ultimately payable by them as the owners of
the adjacent lots, in the form of assessments.

Also, *held*, that this principle was not varied by the fact that by the law
under which the improvement in question was made, a portion of the
expense was borne by the city.

A portion of the land in question had been sold on execution against H.
and bid off by B. Thereafter S. H., claiming to redeem as owner of a prior
judgment which had been rendered more than ten years prior to the
attempt to redeem, deposited with the sheriff the papers and the money
necessary for that purpose. B. also executed to her an assignment of the
sheriff's certificate of sale, in which she was described as redeeming judg-
ment creditor. The sheriff's deed to her states that it was given under
the sale and redemption proceedings, and also under the assignment.
*Held*, that S. H. was entitled to the portion of the award allotted to the
owner of the fee ; and this although the redemption proceedings were
void.

Upon the confirmation of the report of commissioners making the award

in such proceedings, the title of all parties interested in the lands is divested and the award is substituted in place thereof, and whoever at that time has an estate or interest in the lands, is entitled to its proportionate value as then existing.

Accordingly, *held*, that one claiming to have acquired title to the lands by adverse possession, and so to be entitled to the award, could not substantiate his claim where it did not appear that such possession had continued for twenty years prior to the confirmation of the award.

A purchaser of lands at a sheriff's sale, under execution, whether he be the judgment creditor or a stranger, is legally entitled to his deed at the end of the fifteen months, unless a valid redemption has been made; he cannot be deprived of the benefit of his purchase, against his will, by the mere deposit with the sheriff of the amount of his bid, by a person not entitled to redeem.

The purchaser, however, may assign his right; he may also waive any defect in an attempted redemption; and an acceptance of the money tendered for that purpose is such waiver, and a subrogation of the person paying it to his right to a deed.

(Argued March 9, 1880; decided September 21, 1880.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term, which confirmed the report of a referee appointed to determine the right of conflicting claimants to an award made herein.

The facts are sufficiently set forth in the opinion.

*Henry Woodruff* for appellant John Dalley. The confirmation of the commissioners' report, awarding the sums in question, was an adjudication conclusive upon all persons whomsoever that the land had not been dedicated, and that the owner thereof was entitled to substantial damages. (*In re Dept. of Parks*, 73 N. Y. 560; chap. 86, Laws of 1813, § 178; *Pitman* v. *The Mayor*, 3 Hun, 372; 62 N. Y. 637; *Dolan* v. *The Mayor*, id. 472; *In re Arnold*, 60 id. 26; *In re Commissioners*, 50 id. 493; *In re Seventy-sixth Street*, 12 Abb. Pr. 317; *In re Sixty-fifth Street*, 23 How. Pr. 256.) The order of confirmation was "final and conclusive" that the land had not been dedicated, and it cannot be attacked, or reviewed collaterally. (*Swifts* v. *Poughkeepsie*, 37 N. Y. 511; *Peo-*

*ple* v. *Collins*, 19 Wend. 56; *Supervisors* v. *Briggs*, 2 Hill, 135; Laws of 1813, chap. 86, § 178; *Matter of Eleventh Avenue*, 49 How. Pr. 208.) Dedication requires something more than a mere grant in the terms of the deeds from Harris & Morgan. (Kent's Com. [7th ed.] 554; Valentine's N. Y. City Laws, 809; *In re Eleventh Avenue*, 49 How. Pr. 208; Laws of 1799, chap. 70, pp. 773, 737; Re-enacted in 1803, 3 Webster's Laws, 232; Made perpetual in 1806, 4 id. 515; chap. 201, Laws of 1860; chap. 565, Laws of 1865; *Underwood* v. *Stuyvesant*, 19 Johns. 181; *Wyman* v. *Mayor*, 11 Wend. 501; *Grinnell* v. *Kirtland*, 3 Abb. N. C. 386.) Since the Revised Statutes, no right of way or ease-ment can be created by mere description of a lot bounded upon a street. There must be an express covenant or grant. (64 N. Y. 73; Rev. Stats. [2d ed.] 689; *Wheeler* v. *Clarke*, 58 N. Y. 267.) The conveyances by Harris were at most simply a con-ditional dedication, complete upon the acceptance by the city. Acceptance in some form by the city was necessary to com-plete the dedication. (*Niagara Co.* v. *Backman*, 66 N. Y. 266; *Badeau* v. *Mead*, 14 Barb. 328; *Fonda* v. *Borst*, 2 Abb. Ct. App. 155; *Holdman* v. *Cold Spring*, 21 N. Y. 474.) The award represents the value of the fee, and the court cannot, in this proceeding, go behind the report and order of confirma-tion, and consider the award as representing some other and less interest in the land, such as an easement created by dedi-cation. (*Matter of Dept. of Parks*, 73 N. Y. 560; *Trinity Church* v. *Cooke*, 21 How. 140; *Turner* v. *Williams*, 10 Wend. 140; *Gillespie* v. *Mayor*, 23 id. 645.) Land bounded on a street or highway goes to the center, but where it is bounded on or by the side of a street or highway, the grant does not go to the center. (*Jackson* v. *Hathaway*, 15 Johns. 449; *Jones* v. *Cowman*, 2 Sandf. 233; *Wetmore* v. *Law*, 34 Barb. 515; *Van Amringe* v. *Barnett*, 8 Bosw. 367; *Anderson* v. *James*, 4 Robt. 35; *Coster* v. *Peters*, 5 id. 192; *Sherman* v. *McKeon*, 38 N. Y. 266; *Wallace* v. *Fee*, 50 id. 694; *Fearing* v. *Irwin*, 4 Daly, 385; *English* v. *Brennan*, 60 N. Y. 609; *White's Bank* v. *Nichols*, 64 id. 65; *Mott* v. *Mott*, 68 id. 246; *Pat-*

*ten* v. *N. Y. E. R. R.*, 3 Abb. N. C. 341; *In re Dept. of Parks*, 73 N. Y. 560.) The deeds executed and delivered by Dennis Harris to John Dalley December 9, 1853, and December 1, 1855, vested the title to the premises in question in Dalley. (*Jackson* v. *Gurnsey*, 16 Johns. 189; *Robinson* v. *Stewart*, 10 N. Y. 189, 197.) To divest Dalley's title, under any statutory proceeding, the statute must be strictly followed. (*Gilchrist* v. *Comfort*, 34 N. Y. 235; *Morse* v. *Purvis*, 2 Hun, 542.) The proceedings taken by Blanco never resulted in divesting Dalley of his title. (*Robinson* v. *Stewart*, 10 N. Y. 180, 197; *Phyfe* v. *Riley*, 15 Wend. 248, *vide* p. 253.) Mrs. Harris' attempt at redemption, as a redeeming creditor, was unauthorized by the statute, and this act, while it canceled Blanco's purchase, conferred no rights on her. (*Erwin* v. *Schriver*, 19 Johns. 379.) As Dalley has held adversely under claim of title by deed for more than twenty years, the statute of limitation applies. (*Humbert* v. *Trinity Church*, 24 Wend. 587–608; *People* v. *Nelson*, 13 Johns. 340; *Dix* v. *Van Wyck*, 2 Hill, 522; *Jackson* v. *Scott*, 18 Johns. 94.) Nor do the disinterred mortgages, lacking their bonds, and without any evidence of their being considered by Harris, or any assignee of his, as of any force or effect against Dalley, after the proceedings by Blanco in 1856, give to Mrs. Harris any right to the awards. (*Ingraham* v. *Disborough*, 47 N. Y. 421; *Talman* v. *Gibson*, 1 Hall, 308; *Jackson* v. *Pratt*, 10 Johns. 381.)

*John E. Parsons* for appellant William F. Buckley. As between the parties to the present contest, the question is *res adjudicata*. (*In re Eleventh Avenue*, 49 How. Pr. 208; *Schuchardt* v. *The Mayor*, 53 N. Y. 202.) The description in the Harris deeds did not extend beyond the line described as "side of Eleventh avenue," and was a dedication of the land over which the street passes to the public use. (3 Kent's Com. [7th ed.] 554, m. p. 450; *Irwin* v. *Dixon*, 9 How. [U. S.] 10, 30–31; *Underwood* v. *Stuyvesant*, 19 Johns. 181; *Fonda* v. *Borst*, 2 Keyes, 48; *Matter of Brooklyn Heights*,

48 Barb. 288; *Matter of Thirty-ninth Street*, 1 Hill, 191; *Wyman* v. *Mayor, etc., of N. Y.*, 11 Wend. 486; *McMannis* v. *Butler*, 49 Barb. 176; *Child* v. *Chappel*, 5 Seld. 246–256; *Wetmore* v. *Law*, 34 Barb. 515; *Halsey* v. *McCormick*, 3 Kern. 296; *Kingman* v. *Sparrow*, 12 Barb. 201; *Child* v. *Starr*, 4 Hill, 369; *Jackson* v. *Hathaway*, 15 Johns. 447; *Cortelyou* v. *Van Brundt*, 2 id. 357.) If there had been a dedication, no interest or easement would thereby have become vested in the adjoining owner other than such as would have been shared between him and the public at large; the dedication in such a case is to a public use. (*Wyman* v. *Mayor, etc., of N. Y.*, 11 Wend. 486; *Tallmadge* v. *East River Bank*, 26 N. Y. 105; *Williams* v. *N. Y. Central R. R. Co.*, 16 id. 97.) Mr. Buckley, as the assignee of Mrs. Harris, she being vested with the entire legal title to the strips for which the awards were made, and she being the only person to whom the designation of owner can apply, is for that reason entitled to the whole of the awards. (*In Matter of Dept. of Parks*, 73 N. Y. 560.)

*John J. Macklin* for respondent H. B. Gardiner. The title of the owner of the fee is subject to a perpetual easement in the abutting owners in the lands taken. (*White's Bank* v. *Nichols*, 64 N. Y. 65; *Mott* v. *Mott*, 68 id. 253.) Consequently the person entitled to the easement is one of the persons interested in the land taken. Where a non-navigable stream is declared a public highway, the easement of the adjoining owner is property within the constitutional provisions, and unless the statute declaring the stream a public highway makes compensation therefor, it is unconstitutional. (*Morgan* v. *King*, 35 N. Y. 454–7, 461; *Partridge* v. *Eaton*, 63 id. 488; 3 Hun, 535; *Phila. R. R. Co.* v. *Williams*, 54 Penn. St. 103, 109.)

*John C. Shaw* for respondents William Parsons and others. Where land is granted, bounded on a street or highway, there is an implied covenant that there is such a way, that so far as

the grantor is concerned it shall be continued, and that the grantee, his heirs and assigns, shall have the benefit of it. (*White's Bank of Buffalo* v. *Nichols,* 64 N. Y. 65; *Child* v. *Chappell,* 9 id. 250; *Parker* v. *Smith,* 17 Mass. 413; *Parker* v. *Framingham,* 8 Metc. 260; *Russell* v. *N. Y. C. R. R. Co.,* 23 N. Y. 61; *Tufts* v. *City of Charlestown,* 2 Gray, 271; *Cox* v. *James,* 45 N. Y. 557; *Mott* v. *Mott,* 68 id. 246, 253; *Bissell* v. *N. Y. C. R. R. Co.,* 23 id. 61; *Adams* v. *Saratoga R. R. Co.,* 11 Barb. 414; *Lozier* v. *N. Y. C. R. R. Co.,* 42 id. 465; *Putzel* v. *VanBrunt,* 40 N. Y. Sup. Ct. 501; *Paul* v. *Carver,* 26 Penn. St. 224; *White* v. *Godfrey,* 97 Mass. 472; *Woodman* v. *Spencer,* 14 Am. L. Reg. [N. S.] 411.) In similar cases, where riparian rights were involved, the Court of Appeals has held the rights could not legally and constitutionally be interfered with or taken away, without making just compensation. (*Morgan* v. *King,* 35 N. Y. 454–7, 461; *Partridge* v. *Eaton,* 63 id. 488; *S. C.,* 3 Hun, 535; 2 Washburn's Real Prop. 275.)

*Elliot Sandford* for respondents Elias Ponvert and John M. Burke. The owners of the premises within Eleventh avenue and One Hundred and Fifty-sixth and One Hundred and Fifty-seventh streets had a private right of way as an appurtenance to their estate over this lot. (*Tufts* v. *Charlestown,* 5 Gray, 537; *Woodhall* v. *Rosenthal,* 61 N. Y. 390; *Kent* v. *Waite,* 10 Pick. 138; *Keiffer* v. *Inhoff,* 26 Penn. St. 438; *Lampman* v. *Mills,* 21 N. Y. 507.) The fee conveyed by Harris went to the centers of the streets because they were boundaries, and the words of the instrument did not specifically exclude the soil of the streets, and the owner of the lot owned one-half of the boundary or street — that is, to the center line. (*Sizer* v. *Devereux,* 16 Barb. 160; *Hammond* v. *McLachlan,* 1 Sandf. 323; *Herring* v. *Fisher,* id. 344; *Wallace* v. *Fee,* 50 N. Y. 694; *Dinkle* v. *The Welton R. R.,* 24 N. H. 489; *Warner* v. *Southworth,* 6 Conn. 471; *Mott* v. *Mott,* 68 N. Y. 246.) Under ordinary conditions nothing short of express words will prevent the street in front of the premises conveyed from passing also. (*Salter* v. *Jonas,* 39 N. J. L. 469.) Under the

term " owner," in the report of the commissioners, every person entitled to compensation is to be recognized. (Mills' Eminent Domain, § 65.) The commissioners do not adjust conflicting claims. (49 How. 215 ; *Fisher* v. *The Mayor*, 57 N. Y. 344, 350.)

Rapallo, J. The report of the commissioners making the awards which are the subject of controversy on this appeal, shows upon its face that such awards were designed to cover the value of the interests of all persons interested in the lands taken, and that the persons in whose favor the awards were made, and who are designated as " unknown owners," were not restricted to the owners of the ultimate fee, but were intended to embrace all persons having any interest whatever in the lands. The report states that the proprietors, owners of, and parties interested in the several parcels, and their respective estates and interests therein, are unknown, or not fully known, to the commissioners, and that they have estimated and assessed the loss and damage of such owners, proprietors and parties interested, in respect to the whole estate and interest of whomsoever may be entitled unto, or interested in, the lands. The awards, therefore, represent the aggregate value of all the interests in each parcel, and the duty of making the distribution among the several parties, and determining the proportions in which the several claimants should participate, devolved upon the court.

After the confirmation of this report, numerous claimants petitioned for payment of the awards, and it was referred to Hon. William Mitchell to examine the claims and report the proofs, with his opinion thereon. The learned referee appears to have examined the several claims with great care, and reported the proofs with an elaborate opinion, which was sustained at Special Term, and also on appeal to the General Term.

The only appellants to this court are John Dalley and William F. Buckley, assignee of Sarah Harris. John Dalley claimed to be the owner in fee of certain portions of the lands

taken for the opening of Eleventh avenue, above One Hundred and Fifty-fifth street, and for which the awards in question were made. The map or plan of the upper part of the city, as laid out by the commissioners under the act of 1807, did not extend above One Hundred and Fifty-fifth street, and no city streets or avenues, except Tenth avenue, were laid out by public authority northerly of One Hundred and Fifty-fifth street until 1869, when the commissioners of Central Park, under chapter 565 of the Laws of 1865, filed a map, laying out that part of the city north of One Hundred and Fifty-fifth street into streets and avenues. On the map made under the act of 1807, Eleventh avenue was laid out 100 feet wide, and terminated at One Hundred and Fifty-fifth street. On the map of 1869, it was continued above One Hundred and Fifty-fifth street, in the same lines and direction as before, except that it was increased in width by adding twenty-five feet on the east side, and as thus widened extended to Harlem river. The awards now in dispute are for land lying within the strip 100 feet wide, which would have formed the continuation of Eleventh avenue, had it been continued its original width, from One Hundred and Fifty-fifth street, northwardly.

The appellant Dalley claimed to be the owner of the fee of several parcels of land lying within this strip, between One Hundred and Fifty-sixth and One Hundred and Sixty-first streets. As to these parcels, the referee held that Dalley did not have title thereto, but that by certain legal proceedings, hereafter referred to, the conveyances, under which he claimed, had been set aside, and the title had become vested in Sarah Harris, and that as to these parcels William F. Buckley, as her assignee, was entitled to so much of the awards as represented the value of the fee, and that certain other claimants were entitled to the residue, as representing the value of an easement which had been created therein by certain prior conveyances. Dalley's appeal brings up for review two questions: First, that of title, as between him and Mrs. Harris; and secondly, the question whether any such easements had been created as

were found by the referee. Dalley claiming the fee, and that no such easements existed, and that he, as owner of the fee, is entitled to the entire sums awarded by the commissioners to the owners of, or persons interested in, the parcels claimed by him.

The appellant Buckley, as assignee of Mrs. Harris, defends the decision of the referee on the question of her title to the fee, but claims that the referee erred in holding that any part of the award should be paid to the claimants of the alleged easements, and contends that the whole sum awarded by the commissioners, in respect of the land, the fee whereof is found to have been vested in Mrs. Harris, should be paid to him as her assignee.

The appellants Dalley and Buckley, are thus opposed to each other on the question of title, but united on the question of allowing any portion of the awards to the claimants of the alleged easements, who are the respondents on this appeal. As this question affects all of the parties to the proceeding, it will be first examined.

As has been before stated, that part of the city lying north-wardly of One Hundred and Fifty-fifth street was not, prior to 1869, laid out by the public authorities into streets and avenues. By deeds dated in 1849 and 1850 and 1851, Dennis Harris became vested with the title to several tracts of land between One Hundred and Fifty-fifth and One Hundred and Sixty-first streets, which embrace the land in Eleventh avenue, now in controversy, and he is the common source of title of all the parties to this proceeding.

Afterward, in 1854 and 1855, he made conveyances and mortgages of these lands, under which the titles of the several claimants' are derived, in which instruments the streets and avenues above One Hundred and Fifty-fifth street, including Eleventh avenue, although not then laid out by legal authority, were treated as existing streets and avenues, and as if the commissioners' map or plan, made under the act of 1807, had been extended over the premises in question; and the various parcels mortgaged and conveyed were described as bounded by such

streets and avenues, as they would be located if the map had been thus extended. Similar references to some of such supposed or contemplated streets, had been made in the deeds under which Harris took his title, and his grantees subsequently made conveyances treating them as existing streets and avenues, and bounding the lots conveyed, by the lines of such streets and avenues before they had been legally laid out or accepted by the city. The referee held that the conveyances made by Harris, although not amounting to a dedication of the lands embraced in the supposed streets and avenue, to the use of the public, or constituting them public highways, created an easement in the grantees of the lots abutting thereon, which, as between them and their grantor, and those deriving title under him, entitled them to have the lands described in the conveyances as streets and avenues, left open as such, for the benefit of their lots. This position is controverted by both appellants.

The general principle which lies at the foundation of the decision of the referee is too well established by authority to admit of dispute. (*Livingston* v. *The Mayor*, 8 Wend. 85; *Matter of Thirty-second Street*, 19 id. 128; *Cox* v. *James*, 45 N. Y. 557; *White's Bank of Buffalo* v. *Nichols*, 64 id. 65, 73.)

Various reasons are, however, assigned by the appellants for not applying the principle in the present case. It is contended, in the first place, that it is *res judicata* in these proceedings that the conveyances by Dennis Harris did not operate as a dedication of the premises described as streets and avenues, to those purposes. It appears that in the first report of the commissioners, a merely nominal compensation had been awarded to the owners of the lands in question, such lands having been treated by the commissioners as dedicated to public use. The court refused to confirm this report and sent it back to be corrected by awarding just compensation for the land described in the conveyances as streets and avenues. This is claimed to be an adjudication that no rights had been parted with by the owner of the fee by conveying lots by descriptions bounding them on such streets and avenues, and that no easement had been acquired by the abutting owners. On this point we con-

cur with the learned referee. The only right adjudicated upon, in sending the report back for correction, was that of the city, to take the lands described as streets and avenues, without making substantial and just compensation therefor, and it was adjudged that the lands had not been so dedicated to the use of the public, as to confer that right upon the city. This adju. dication being unreversed, was binding upon the city, but was not a bar to the claim of an abutting owner that the owner of the fee of the land taken for the street or avenue had, by his own deeds, subjected such land to an easement in favor of the abutting owners. Whether such an easement had been created was a question to be determined in the proceeding for the distribution of the award, and was not prejudged by the decision that the land taken had not been so dedicated to public use as to deprive the owners thereof, or parties claiming interests therein, of the right to just compensation therefor.

No appeal was taken from that order, and it must, therefore, be deemed to have finally disposed of the question of dedication of the lands to the public. But the authorities cited fully establish that, without making such a dedication to the public, a grantor may, by selling lots and describing them as bounded on a street running through his own land, create an easement in the land called a street, in favor of his own grantees, and that although the fee of such land remains in him, it is incumbered by that easement.

It is further contended that the confirmation of the amended report, whereby substantial damages were awarded to the owners of the land taken, was a judgment conclusive upon all the parties to the proceeding, and determined that the land had not been dedicated, and that the owners thereof were entitled to compensation therefor. The conclusiveness of the order cannot be denied, but the appellants go further and construe it as determining that the entire sum awarded for the value of the land was payable to the owner of the fee without regard to any easement, and the *Matter of the Department of Parks* (73 N. Y. 560) is relied upon as sustaining that position. That case affords no sanction to any such proposition as applied

to the facts of the present case. The language of the opinion, while appropriate and accurate as applied to the facts and questions then before the court, is incapable of being imported into the present discussion. There was no question in that case of any easement vested in any individual. The question in controversy was the title to the fee of the land. Both claimants claimed the fee; neither claimed any easement. The easement spoken of was a public easement, and the court said "it mattered not whether the unknown owners owned simply the fee of the land taken, subject to a public easement, or whether they owned the fee absolutely free from any easement. The amount awarded must be taken to have been made for the interest of the unknown owners, whatever it was. If it was too great, the city should have moved to correct it before confirmation of the award." This language is totally inapplicable to a case where an individual owner of a perpetual easement in the land taken, claims to be one of the unknown owners for whose benefit the award was made. This court never intended to hold that where an award of the full value of the land was made to unknown owners, the owner of the naked fee was entitled to the whole award notwithstanding that the right to the beneficial enjoyment of the land was vested in others. In the present case the language of the report is explicit in this respect. It shows that the award was of the full value of the land, and that it was intended for the benefit, not merely of the owner of the ultimate fee, but of "the owners, proprietors, and parties interested, in respect of the whole estate and interest, of whomsoever may be entitled unto, or interested in," the land. This clearly includes parties having a perpetual easement.

The most plausible of the objections taken is that the award being intended to compensate for the loss or damage sustained by the parties interested in the land taken, the owners of the easement should not participate, because they are not deprived of their easement, but retain their right of way over the avenue in an improved form. This argument, however, applies with equal force to the owner of the fee. The land was, before

the opening of the avenue as a public highway, subjected to a perpetual easement, which deprived the owner of the beneficial enjoyment of the land. There would be manifest injustice in awarding the whole compensation to the owner of the fee, in view of the fact that such compensation is ultimately payable by the owners of the adjacent lots in the form of assessments, while no part of these assessments is chargeable to the owners of the fee of the land taken. The adjacent owners would thus be compelled to pay full value for a right of way which they already possessed. And it is in evidence in the case that all the lands fronting on the avenue were assessed for the expense of the improvement, one element of which expense is the damage paid for land taken. If the compensation paid to the owners of the fee had been merely nominal, it would have been equitable to adopt the same rule in respect to the owners of the easement. They would then have been compensated for their easement, by the deduction of its value from the award to the owner of the fee, and the consequent reduction of the assessment chargeable against their property. But the commissioners having, under the direction of the court, awarded substantial and just compensation for the rights and interests of all parties interested in the lands, and having treated them as subject to no public rights, the aggregate of this compensation must represent the entire value of the land taken, and there seems to be no means of equitably adjusting the rights of the parties except by pursuing the course adopted by the learned referee, of treating all these rights and interests as having been taken by the city, and apportioning the awards among the several parties in whom these rights and interests were vested.

The circumstance that under the law by virtue of which the improvement in question was made, a portion of the expense was borne by the city cannot vary this principle. If the result is that the awards were too great, in view of that circumstance, no one but the city can complain. It does not affect the rights of the several parties to participate in the awards, although the referee may have taken it into consideration in determining the

proportions in which the owners of the easement and the owners of the fee should participate.

The rule of apportionment adopted by him, viz.: one-fourth to the owner of the barren fee and three-fourths to the owners of the easement or right of way, it is difficult for us to review. It was adopted with reference to all the circumstances and equities of the case, in the exercise of a sound judgment by a referee who evidently had a thorough comprehension of the case, and was eminently qualified to decide such a matter. With his determination we see no reason to interfere.

The only remaining question is that of title, which arises on the conflicting claims of the appellants, Dalley and Buckley, to the fee of a portion of the land taken.

The facts out of which this controversy arises are as follows:

In December, 1855, Dennis Harris, then being the owner of the fee of the lands now in question, described in the deeds before referred to as Eleventh avenue, conveyed them with other lands, to John Dalley, by two deeds, dated December 1, 1855. On the 3d of April, 1856, one Blanco recovered and docketed a judgment against Harris for $72,685.66, and afterward, in the same year, brought an action in the Supreme Court against Harris, and Dalley his grantee, to have the two deeds of December 1, 1855, set aside as fraudulent against the plaintiff and other creditors of Harris, and on the 21st of October, 1856, judgment was entered in that action, setting aside said deeds as fraudulent and void as against the plaintiff and other creditors of Harris, and declaring the lands subject to sale under execution on the judgment obtained by the plaintiff. On the 17th of January, 1866, Blanco issued an execution on his judgment, under which execution the parcels now in dispute, with the exception of two small fragments, were, on the 3d of March, 1866, sold by the sheriff to Blanco, for $23,000, and a certificate of sale was given to him, declaring that he would be entitled to a deed on the 4th of June, 1867, unless the property should be sooner redeemed.

On the 9th of November, 1868, Blanco assigned this certificate to Sarah Harris, then the widow of Dennis Harris, with

all his right to a conveyance, and on the 13th of November, 1868, the sheriff conveyed the premises to Mrs. Harris.

The appellant Dalley now claims that this deed is void, on the following grounds.

A certificate of the sheriff dated June 3, 1867, and recorded June 6, 1867, was put in evidence, from which it appears that on the 1st of June, 1867, Sarah Harris deposited with the sheriff who made the sale, a copy of the docket of a judgment in favor of I. T. Alfonso and others, against Dennis Harris, rendered January 30, 1856, together with assignments vesting said judgment in her, and other evidences of her right to redeem the property from the sale under the Blanco execution, and that she claimed such right to redeem, as assignee of said senior judgment, and tendered to and left with the sheriff the amount of the bid with interest, and demanded a transfer or conveyance of the premises.

The hereinbefore mentioned assignment from Blanco to Mrs. Harris, dated November 9, 1868, of his certificate of sale, describes her as redeeming judgment creditor, and the sheriff's deed of November 12, 1868, states that it is given under the sheriff's sale of March 3, 1866, and said redemption proceedings as well as the assignment of Blanco's certificate of sale.

The appellant Dalley contends that the redemption proceedings were void, and Mrs. Harris had no right to redeem, because the Alfonso judgment under which she claimed that right was recovered April 30, 1856, more than ten years before her attempt to redeem, and had then ceased to be a lien upon real estate, and that under the statute, to entitle a judgment creditor to redeem, his judgment must be a lien upon the property.

He further contends that such attempt to redeem, although ineffectual, discharged the land from Blanco's sale, because Mrs. Harris deposited with the sheriff the amount of Blanco's bid. That it must be presumed that the sheriff paid over the money to Blanco, and consequently his right to a deed was extinguished, and his assignment of his certificate of sale to her, vested in her no right to a deed from the sheriff.

This position cannot be sustained. There is no evidence

that the sheriff paid to Blanco the money deposited by Mrs. Harris for the purpose of redemption, or that Blanco accepted it, nor can those facts be presumed. If, as claimed, the redemption was void, Blanco was not bound to accept the money, and was entitled to his deed, notwithstanding the deposit with the sheriff, by one not entitled to redeem. The amount deposited was but a small portion of the amount of the judgment, and there is no evidence that it was enough to cover the value of the land. It would make no difference, however, how those facts stood. A person buying at a sheriff's sale of land under execution, whether he be the judgment creditor or a stranger, is legally entitled to his deed at the expiration of fifteen months, unless a valid redemption is made in the meantime. He cannot be deprived of the benefit of his purchase, against his will, by the mere deposit with the sheriff of the amount of his bid, by a person not entitled to redeem. Assuming, therefore, that the attempted redemption by Mrs. Harris was ineffectual, as claimed, Blanco's right to his deed was not impaired. Mrs. Harris was entitled to a return of the money she had deposited with the sheriff, and Blanco was entitled to a deed pursuant to his certificate. This right he could assign. He did assign it to Mrs. Harris, and she became entitled to a deed by virtue of that assignment. It would seem also that Blanco might have waived any defect in the redemption, and that if he had accepted the money, such acceptance would have operated as a waiver, and a subrogation of Mrs. Harris to his right to a deed, without a formal assignment. If the redemption was valid, it is equally clear that Mrs. Harris was entitled to a deed and that her taking an assignment of Blanco's purchase did not impair that right. In any aspect of the case she obtained a good title under the sheriff's deed. The payment to the sheriff could in no event inure to the benefit of the judgment debtor or his grantee.

The appellant Dalley further claims that he acquired title to the land in dispute by adverse possession. This claim is based upon the fact, that in the complaint in the action brought by Blanco, to set aside the deeds of December, 1855, it is

alleged that Dalley entered into possession under those deeds. Assuming that this was evidence of the fact, no continuance of such possession for twenty years was shown, but on the contrary, the land was taken by the city within less than twenty years after the date of the deeds. The final report of the commissioners making the award was confirmed April 17, 1875, and this divested the title of all parties and substituted the awards in place thereof. Mrs. Harris' title to the land certainly had not, at that date, been barred by adverse possession under the deeds of December, 1855, assuming that such possession had been proved. Whoever, at the date of the awards, had an estate or interest in the lands, is entitled to the proportionate value of such estate or interest as then existing.

The two fragments of land, not included in the sheriff's deed to Mrs. Harris, are designated in the report of the commissioners as No. 1, valued at $131, and No. 13 A, valued at $631. The referee awarded to Buckley, as assignee of Mrs. Harris, as compensation for the fee, subject to the easement, one-fourth of these amounts, viz. $190.50. The appellant Dalley claims that he was the owner of the fee because those two fragments were included in the deeds from Harris to him, and that notwithstanding that those deeds were adjudged void and set aside as to creditors, they were valid as between the parties, and the creditors not having enforced their claims against those two fragments, his title to them under his deeds remained good.

Much testimony was taken before the referee on this question, and he sustained the claim of Mrs. Harris to the awards, on the ground that when Harris conveyed to Dalley, he took back from him purchase-money mortgages, covering the entire premises, for $83,000, and that these mortgages had by various assignments become vested in Mrs. Harris. That after the deeds had been set aside, the parties had treated both deeds and mortgages as canceled and Mrs. Harris was entitled as sole devisee of Dennis Harris, but that if the entire transaction should not be deemed to have been thus canceled and the mortgages should be treated as existing liens, Mrs. Harris, as

assignee of the mortgages, was entitled to the awards.    Dalley claimed that the mortgages had been released, and set up various other defenses to the title of Mrs. Harris under them, which were not sustained by the referee.    Without going into detail it is sufficient to say that we have examined the proofs and the opinion of the referee on this point, and do not think that his conclusion should be disturbed.

The order appealed from should be affirmed, with costs.

All concur, FINCH, J., not on bench at argument.

Order affirmed.