In re DECATUR ST. IN CITY OF NEW YORK.

Appeal of WALKER.

(Supreme Court, Appellate Division, Second Department. June 18, 1909.)

1. EMINENT DOMAIN (§ 149*)—ACQUISITION OF LAND FOR STREETS—COMPENSATION.

In proceedings by a city to acquire the fee for street purposes of land laid out by the proprietor as a street, the fee of which is in him and disconnected from the abutting lots, the fee owner and the abutting owners are only entitled to nominal damages except in exceptional cases, the burden of proving which rests on the owner.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 149.*]

2. EMINENT DOMAIN (§ 152*)—ACQUISITION OF LAND FOR STREETS—COMPENSATION.

A proprietor divided a tract into lots and streets, and sold lots by descriptions, referring to the streets, and thereby disconnected the lots from the streets, the fee to which remained in him. Thereafter the city acquired the fee of a street by condemnation. Awards for parcels thereof were made to unknown owners. *Held* that, as the awards were for all whose interests, whether in fee or by easements, were involved in the taking, they must be divided between the fee owner and the abutting lot owners, and the court properly gave the fee owner a nominal sum and gave the remainder to the abutting owners, for an assessment to pay the awards and the expenses was cast on the abutting lots.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 152.*]

3. EVIDENCE (§ 51*)—APPEAL—JUDICIAL NOTICE—MATTERS OF RECORD.

The court on appeal from an order distributing an award made to unknown owners in condemnation proceedings may inspect the public records and learn that an assessment to pay awards and expenses for the taking of the fee in land already dedicated for street purposes had been made with a view to uphold the order of the lower court directing the payment of the awards made.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 51.*]

4. EMINENT DOMAIN (§ 145*)—ACQUISITION OF LAND FOR STREETS—AWARDS.

The right of abutting owners to a part of the award made for the taking by a city for street uses of land laid out as a street by the proprietor is not affected by the fact that no assessment to pay the awards and expenses had been cast on the abutting land.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 145.*]

Woodward, J., dissenting.

Appeal from Special Term, Kings County.

In the matter of the application of the City of New York to acquire lands to open Decatur street. From so much of an order of the Special Term as directed the payment to the City of New York and others of certain awards made for lands taken by the city, Frank B. Walker appeals. Affirmed.

Argued before WOODWARD, JENKS, GAYNOR, BURR, and MILLER, JJ.

---

John M. Perry, for appellant.

James A. Sheehan, for respondents Schmitt, Schauf, and Jung.

Merle I. St. John, for respondent Wenzler.

GAYNOR, J. Streets to be opened in the future, including the one now called Decatur street, were laid out on a tract of land in the township of Bushwick, pursuant to chapter 296, p. 437, of the Laws of 1852. The said town afterwards became a part of the city of Brooklyn. The owner of the said tract also made and filed a map thereof by lots and showing the said streets, and thereafter sold the same by descriptions referring to the said streets. The said streets thereby became subject to the easements of the said lots thereon. In 1903 the city of New York acquired the fee of the land in the said Decatur street for street uses by a proceeding to open the said street. Awards for several parcels thereof were made to "unknown owners." The said parcels had not been included in the original conveyances of the abutting lots, and in that way became disconnected therefrom, and the fee thereof remained in the tract proprietor. The appellant succeeded to such title, and brought this proceeding to get the awards. The court at Special Term has allowed him only $1 thereof in the case of each parcel, and given the rest to the abutting owners.

If the awards had been made to the owner of the fee, he would not need to have brought this proceeding. By the adjudication of the order of confirmation in the proceeding they would have been his, and he could not be deprived of them. But being to "unknown owners," they are for all persons whose interests, whether in fee or by easements, were involved in the taking, excepting any of such persons to whom their awards are made to them by name, there being none such here. The awards "were not restricted to the owners of the ultimate fee, but were intended to embrace all persons having any interest whatever in the lands"; and the case from which this quotation is made is direct authority that the abutting owners have such an interest, however small or difficult of definition it may be (Matter of the Opening of Eleventh Street, 81 N. Y. 436). And that the award has to be divided between the fee owner of the street strip and the abutting owner is settled by authority. Each of them was entitled to only a nominal award and should have been given no more. The naked fee in the street, disconnected from the abutting lot, is presumed to have only a nominal value. In the case of City of Buffalo v. Pratt, 131 N. Y. 293, 30 N. E. 233, 15 L. R. A. 413, 27 Am. St. Rep. 592, the abutting owner owned the land in the street, and it was therefore of substantial value to the owner. If an exceptional case can exist where it is of substantial value to the owner when disconnected from the abutting land, the burden is on the owner to show it, which was not done here. In the same way the easements of the abutting owner, actually or theoretically taken in the taking of the street strip, are only of nominal value. But where instead of a nominal award, a substantial award is made to "unknown owners," it has to be divided between them in some way. There is no one to take it. That this is so, and that it is proper to make the division in the way the learned court below did,

namely, give the nominal fee owner $1 and the remainder to the abutting owner, for the equitable reason that an assessment to pay the awards and the expenses is cast on the abutting lands, is settled by authority. Matter of Opening of Eleventh Street, 81 N. Y. 436; Matter of Opening Beverly Road (Sup.) 115 N. Y. Supp. 208.

But it is said that it does not appear that such an assessment was cast in this case,—that the amount was not cast on a wide assessment district instead of on the abutting lands—or that the city did not pay a part of it. Well, this is all a matter of public record in the building in which our court sits, and we may inspect the same and see that the assessment was made in the usual way, i. e., to the centre of the blocks, to uphold the order below. Moreover, the brief of the learned counsel for the appellant raises no such question, but on the contrary argues that the abutters "acquiesced in the assessment" of the abutting lots for the awards and expenses, nor was it raised below. And finally it was held in Matter of the Opening of Eleventh Street, supra, that the said considerations could not affect the rights of the parties to have the award divided between them.

The order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur, except WOODWARD, J., who dissents.

WOODWARD, J. (dissenting). In the year 1903 the city of New York instituted proceedings to acquire the title to land required for the opening of Decatur street, in the borough of Brooklyn. Commissioners were duly appointed and awards were made to the respondent Schmitt for parcel No. 7 in the sum of $1,662.12, to the respondent Schauf for parcels 10 to 21 in the sum of $1,589.78, to an unknown owner for parcels Nos. 24 and 25 in the sum of $246.64, and to an unknown owner for parcel No. 26 in the sum of $677.16. The report of the commissioners was confirmed on the 26th day of October, 1906, and no appeal has been taken from this determination, so that, no matter how excessive these awards may be, they are final and conclusive, even though it be assumed that they should have been but for nominal damages, and that the commissioners and the court when it confirmed the report mistook both the law and the facts applicable to the case. De Peyster v. Mali, 92 N. Y. 262, 269, and authorities there cited. These awards were made for certain definite parcels of land, and, so long as the awards remained in force, none of the parties could dispute that the amounts awarded were just and proper. It was sufficient for the owners of any of these parcels to show that the title was in them at the time the awards were made, and this fact entitled them to the moneys awarded to such parcels. De Peyster v. Mali, supra, pp. 269, 270. The appellant presented a petition to the Kings county Special Term in February, 1908, setting up an assignment from the devisees of Augustus Ivins made in 1907, and praying that amounts awarded for damage parcels 5, 7–21, inclusive, 24, 25, and 26, be ordered paid to him. The respondents Schauf, Jung, and Schmitt joined issue by the service of answers, and on March 3, 1908, the matter was sent to a referee, who found that the respondent Schmitt as

owner of the fee in the street to one-third of parcel 7 was entitled to the payment of one-third of the award for that parcel, and that the petitioner was entitled to payment of the whole of the award for damage parcels Nos. 8, 9, 10 to 21, 24, 25, and 26, and two-thirds of the award made to parcel No. 7, with interest. The respondents filed exceptions to the report, and, on the motion to confirm the referee's report, the Special Term entered an order denying the motion to confirm, and adjudged that the interest of the petitioner in each of the awards is the nominal sum of $1, and directing payment of the awards less such nominal sum and less the costs of the reference to the respondents, Schmitt, Jung, and Wenzler. That is, the learned Special Term, holding with the referee that the appellant Walker was the owner of the fee of the lands taken, lying entirely within the lines of Decatur street, in effect reverses the determination of the commissioners and the order confirming their report, and directs the payment of a nominal sum to the owner of the fee, and orders the payment of the balance of the award to persons who are claimed to have parted with no property whatever. We say that the court holds with the referee that the ownership was in Walker, for on no other theory could he be awarded nominal damages, and this ownership is recognized in the opinion handed down by the learned court. The learned court, after discussing the ownership of Walker, as to which there can be no reasonable question as I construe the record title, and holding that he was entitled to nominal damages for the taking of the fee, enters upon the discussion of the claim of the abutting owners. These are shown to the court's satisfaction to have no interest whatever in the awards. Having thus disposed of the claims of both parties, overruling a conclusive order of the court in so far as it related to the rights of the owner of the fee of the lands taken, the learned court travels outside of the record, and concludes that, as the abutting owners are to pay the awards made, it is more equitable that they should have the money than that it should be retained by the city of New York, or be paid over to the owners of the property, who have already been conclusively adjudged to be entitled to the same. The court, evidently in a mood to do justice, says:

"So then the situation is this: There was on account of taking the property due nominal sums to the owners of the bare fee in the street and to persons owning easements without such title. But the commissioners have given a joint award of many thousand dollars. No person can show other than nominal interest in it. What shall be done with it? Left with the city? The city has no right to it, and, moreover, will by assessment raise money to pay it. Who will pay the assessments? The abutting owners. But on this account they are not permitted of right to take the money as damages. The obligation to pay an award is not relevant to show damages arising from taking property. But it is most equitable that the abutting owners should have this award. It ought not to have been awarded to them, and thereby necessitate an assessment against their property. But the award exists, although it ought not to exist. By returning the money directly to them, this error can be measurably corrected. It may be that rules, practice, and confirmation of the report will be invoked against such disposition. But who shall invoke them? Persons not entitled to the award cannot. * * * I order it paid to them, not because the damage belongs to them, but because they must pay the same."

‎· Passing over the obvious objection that this is permitting the Special Term to overrule and correct the errors—if errors they are—of what has been held to be a conclusive adjudication of the rights of claimants, there is a very fundamental objection upon the merits to this empirical administration of justice. It does not appear in the record before us that the abutting owners are to pay these awards, nor do we find such a provision in the statutes. Chapter 658, p. 1684, Laws 1906, amends title 4 of chapter 17 of the Greater New York charter (Laws 1901, p. 405, c. 466), relating to the opening of streets and parks, and section 970, as amended, provides that the city of New York is authorized to acquire title either in fee or an easement, as may be determined by the board of estimate and apportionment, for the use of the public to all or any of the lands required for streets, parks, approaches to bridges, and tunnels, etc., and that the said city of New York is authorized to apply to the court "for the appointment of commissioners of estimate to ascertain and determine the compensation and recompense which should justly be made to the respective owners," etc., of the lands, tenements, hereditaments, and premises proposed to be taken for any of the purposes aforesaid, and, in a proper case, for the appointment of one of such commissioners of estimate as a commissioner of assessment to assess the cost of such improvement or such proportion thereof as the board of estimate and apportionment directs, upon such parties and persons, lands and tenements as may be deemed to be benefited thereby. Section 973, as amended, provides for the appointment by the court of three discreet and disinterested persons, citizens of the United States and residents of the borough to be affected, as commissioners of estimate, and one of said commissioners of estimate is to be designated as commissioner of assessment for the performance of the duties in the title mentioned. Section 980 provides that after such commissioners of estimate have heard the testimony, etc., in relation to properties to be taken, they shall without unnecessary delay ascertain and estimate the compensation which ought justly to be paid by the city of New York to the respective owners of lands to be taken, and that "the commissioner of assessment shall make a just and equitable estimate and assessment, also, of the value of the benefit and advantage of such improvement to the respective owners, lessees, parties, and persons respectively entitled unto or interested in the lands, tenements, hereditaments and premises, not required for the said improvement," and that the "commissioner of assessment shall in making his estimate and assessment of the value of the benefit and advantage of the said improvement, assess any and all such lands, tenements, hereditaments and premises within the area of assessment fixed and prescribed by the board of estimate and apportionment, as the area of assessment for benefit, in proportion to the amount of the benefit received. The board of estimate and apportionment is hereby authorized and required at the time of the adoption of the resolution directing the institution of proceedings to acquire title to the lands required for the improvement to fix and determine upon an area or areas of assessment for benefit in all proceedings authorized by it, and shall have power to review and alter

such area of assessment at any time before such assessment for benefit shall be completed and be confirmed by the supreme court, if it shall deem such action advisable. * * * It may in any case determine whether any, and, if any, what proportion of the cost and expense thereof shall be borne and paid by the city of New York, and may also determine in any proceeding or class of proceedings or generally that the expenses of the bureau of street openings incurred by reason of the provisions of this title shall be borne and paid by the city of New York and the remainder of such cost and expense shall be assessed upon the property deemed by it to be benefited thereby." There are other provisions of the same general nature contained in this section; but enough has been shown to indicate that the compensation to be paid for lands taken is not, under the statute, confined to the abutting owners. A portion of the cost of the improvement may be borne by the city of New York, and the remainder is to be assessed upon the assessment area fixed by the board of estimate and apportionment, which may entirely exclude the abutting property, though this is not usual. So far as the record now before us discloses, the property owned by the three respondents may not be assessed a single dollar. It may be that the entire advantage of the taking is that of the city of New York and those owning property reached over this highway. They own lands abutting upon a way opened by their predecessors in title under such circumstances that it could not be closed to them. They lose nothing by the city of New York taking the fee for the purposes of a highway, but who shall say as a matter of law—for there are no facts disclosed by the record, and the statute does not so provide—that these lands have been benefited to the extent of the compensation awarded by the commissioners of estimate, or that the commissioner of assessments has so determined? How much the city of New York is to pay of this sum, how much the abutting owners are to pay, how large the area of assessment fixed by the board of estimate and apportionment is, and what proportion of the burden is to fall upon those who are in no wise related to this proceeding, are all matters which we know not from anything which is disclosed by the record. The area of assessment may extend for a mile or more beyond the lands taken, hundreds of people, aside from the respondents, may be called upon to pay for this improvement, and thus these abutting owners would be receiving a gratuity; for which there could be no warrant in law or equity.

But it is said that we are not at liberty to take this view; that we are concluded by authority; that in The Matter of Opening Eleventh Avenue, 81 N. Y. 436, the court held the doctrine of the Special Term in this case, and, if this is true, then, no matter what the processes of reasoning, we must acquiesce. We are not bound, however, to extend the authority of a close case beyond the facts disclosed in the particular action or proceeding, and there are at least two conspicuous particulars in which the facts now under consideration differ from those in the case cited as controlling. In the Eleventh Avenue Case the commissioners, upon an original report, awarded merely nominal damages to the premises; which, as in the case at bar, consisted of

property in a way dedicated by the owner to the use of persons who had purchased the adjacent lands on the theory that these had been dedicated to public use. The court refused to confirm this report, and sent it back with directions to award just compensation for the land described in the conveyances as streets and avenues. Subsequently the commissioners made a new report awarding substantial damages, and this report was confirmed, no appeal being taken from the order of confirmation. Several parties claimed the award as abutting owners, and as owners of the fee, and, upon the matters being sent to a referee for adjustment, the learned referee reported in favor of dividing the award, one-fourth to the owner of the fee and three-fourths to the owners of the easement or right of way over the lands as streets, which the city was taking in fee, and it was this report of the referee which was confirmed by the judgment in that case. It did not hold that the owner of the fee, subject to the private easement, had only a nominal value in the premises. The judgment determined that he was entitled to one-fourth of a substantial award, and upon this point the court say:

"The rule of apportionment adopted by him, viz., one-fourth to the owner of the barren fee and three-fourths to the owners of the easement or right of way, it is difficult for us to review. It was adopted with reference to all the circumstances and equities of the case in the exercise of a sound judgment by a referee who evidently had a thorough comprehension of the case, and was eminently qualified to decide such a matter. With his determination we see no reason to interfere." Page 450 of 81 N. Y.

In the case now before us, the learned referee held that the entire award should go to the owner of the fee, and this determination has been overruled, not upon any consideration of the evidence, but upon the assumption that the owner of the fee had only a nominal interest in the land. This is clearly in conflict with what was determined in the Eleventh Avenue Case, supra, for there the original award was refused confirmation because it only allowed nominal compensation, and upon the final adjustment the fee owner, subject to the easement, was awarded one-fourth of the entire award, thus clearly recognizing that a fee owner of land, subject to an easement in behalf of those owning the abutting lands, is entitled to more than a nominal sum for his premises. He has rights in the land which are not absorbed in the mere private easement or right of way, and these rights the court in that case held must be respected—were respected in the adjustment made by the referee giving him one-fourth of the award as made under the direction of the court. Clearly this case affords no justification for the arbitrary determination of the court at Special Term or here that the owner of the fee, subject to a private easement or right of way, has only a nominal interest in the land, where substantial damages have been awarded by the commissioners, and this award has not been challenged. Whether the report of the referee made a proper disposition of the matter upon equitable grounds presents a different question, but it is certain that the Eleventh Avenue Case does not justify the determination here under review, but is directly contrary to what was determined by the judgment in that case.

Moreover, there was evidence in that case that the abutting owners were, in fact, to pay for the lands taken, and it was not left for the court to search the archives to discover whether this fact did or did not exist. The court say:

"The land was before the opening of the avenue as a public highway subjected to a perpetual easement, which deprived the owner of the beneficial enjoyment of the land. There would be manifest injustice in awarding the whole compensation to the owner of the fee, in view of the fact that such compensation is ultimately payable by the owners of the adjacent lots in the form of assessments, while no part of these assessments is chargeable to the owners of the fee of the land taken. The adjacent owners would thus be compelled to pay full value for a right of way which they already possessed. And it is in evidence in the case that all the lands fronting on the avenue were assessed for the expense of the improvement, one element of which expense is the damage paid for land taken. If the compensation paid to the owners of the fee had been merely nominal, it would have been equitable to adopt the same rule in respect to the owners of the easement. They would then have been compensated for their easement by the deduction of its value from the award to the owner of the fee and the consequent reduction of the assessment chargeable against their property. But the commissioners having, under the direction of the court, awarded substantial and just compensation for the rights and interests of all parties interested in the lands, and having treated them as subject to no public rights, the aggregate of this compensation must represent the entire value of the land taken, and there seems to be no means of equitably adjusting the rights of the parties except by pursuing the course adopted by the learned referee of treating all these rights and interests as having been taken by the city, and apportioning the awards among the several parties in whom these rights and interests were vested." Page 449 of 81 N. Y.

But beyond this the court points out in the opening paragraph of the discussion that the report of the commissioners "shows upon its face that such awards were designed to cover the value of the interests of all persons interested in the lands taken"; while in the case at bar the report is not before us.

This is the fair extent of the rule laid down in the Eleventh Avenue Case, and to this extent it is controlling that where one has granted lands bounded upon proposed streets under such circumstances that it does not amount to a dedication for public use, or constitute them public highways, it operates to create an easement in the grantees of the lots abutting thereon, which, as between them and their grantor, and those deriving title under him, entitles them to have the lands described in the conveyances as streets and avenues left open as such for the benefit of their lots; that such an easement for the benefit of lot owners does not take all of the substantial value of the owner of the fee; and that, when the public authorities take the property under the power of eminent domain, they must make just compensation therefor, which includes the value of the land taken, with the private easements, and that, as between the unknown owners of the fee and the easements, it is for the court to determine the equities. In other words, if a grantor conveys lands bounded by a proposed street, his grantee takes the land with an easement in the proposed street for the benefit of his land. The public had no right in this proposed street. It is merely a matter between the grantor and the grantee, and they may by mutual agreement destroy this easement at any time. It is this land and this right of the grantor and grantee to destroy this easement that

the power of eminent domain lays hold upon, and takes for the purpose of opening a permanent highway, which private individuals cannot obstruct or discontinue. It not only takes the land, but it takes from the abutting owner the power to surrender his easement in such way, and these are property rights which the public must pay for before they can take the lands under the constitutional provision for just compensation, and these are necessarily involved in the taking of lands subject to such easements. The commissioners determine the value of the land, subject to this easement, which is the value of the land with the right in the owner of the easement to surrender the same, or, to put it in another way, it is the full value of the land as represented by the owner of the fee and the owner of the private easement, and where these parties are unknown, or there is a controversy as to how this just compensation shall be divided between the owners of the tangible and intangible property, it is for the court in a consideration of all the surrounding circumstances to say. The abutting owner disposes of his private easement of light, air, and access; disposes of his right to surrender these to his grantor and thus to vest in him the full property right in the land, and secures substantially the same easements from the public. Holloway v. Southmayd, 139 N. Y. 390, 405, 406, 34 N. E. 1047, 1052. Nothing in practical effect is taken from the abutting owner by the operation, except his right to sell the easement to his grantor, but the owner of the fee is deprived of his land and of the right of extinguishing the private easement; the situation being, as to him, very different from a case where he merely owns the fee of a public highway, where he has no right to repossess himself of the easement, except in the event of an abandonment of the public use. Just how to determine what interest the owner of the fee and the owner of the easements have in any particular piece of property is, of course, very difficult. It must depend upon the circumstances of each particular case. In some instances the right of the owner of the easement to surrender to the grantor such right, and thus to vest in him the full property right in the land, would be of great value, might be equal to a considerable part of the total value of the land, while in other instances it would have but a mere nominal value, and no rule can be laid down for the government of cases generally, but each must depend upon its own peculiar facts. It is certain, however, that land subject to a private easement is worth the full value of the land and easement merged in one person, for it is within the power of the owners to so merge them, and the Eleventh Avenue Case (supra) merely holds that it is for the court taking into view all of the circumstances to determine what portion of the award belongs to the owner of the fee—what part to the owner of the easement. It cannot be determined arbitrarily as a matter of law that it all belongs to the owner of the fee, nor yet that it all belongs to the abutting owner, and the fact that the abutting owner is to pay the assessment—if this is true—is merely one of the facts to be taken into consideration in adjusting the equities, and it has no relation whatever to the question of law involved here. It has been conclusively established by the report of the commissioners, approved by the court without question, that the owners of the fee and of the private easements are entitled to a substantial sum as just compensation

for the property taken, and, as I have shown that it cannot be said as a matter of law that the owner of the fee, subject to an extinguishable easement, is only entitled to nominal compensation, it follows that the judgment here under consideration is wrong and must be reversed.

It is true that this case appears difficult to distinguish from the Beverly Road Case (decided by this court on the 5th of March of the present year) 115 N. Y. Supp. 208. I took no part in that decision, and the court was not unanimous. In that case there appears to have been some question whether the title of the fee was not the result of mere inadvertence, as other property conveyed by the same grantor in the immediate vicinity and out of the same plot had been conveyed to the center of the proposed street, so that only a single piece of property of a few feet remained in the ownership of the grantor or his successors in title, and this was so involved in the general scheme under which the adjacent properties were conveyed that it left no substantial value in the fee ownership. That is, the owner of the fee and the owner of the easement could not, by merging their interests, produce any substantial property value, for the reason that this few feet of land in the highway cut off from all the rest of the premises by conveyances which carried the fee to the center of the proposed street was incumbered by an easement for the benefit of these same adjacent properties. The owners of the fee of the way who were likewise abutting owners had an easement in this property for the purposes of access to the remainder of the way, and this was such an easement as could not be destroyed by the concurrence of the owner of the fee and of the abutting premises. The adjacent owners of the way held the fee, subject to the private easement of all the other holders, including the owners of the naked fee, and the learned referee who had the case under consideration determined that this mere barren fee, subject to nonextinguishable easements, had only a nominal value. The learned Special Term thought that the equity was equal to 12 per cent. of the award, and directed such payment, but this court, viewing the case from the standpoint of its own particular facts, held with the referee, and reversed the order. The result of that case, it seems to me, was not inconsistent with my views. It did not hold, under all circumstances, that the owner of the fee in a highway, subject to easements, had only a nominal value. It merely concurred in the view of the learned referee that, under the facts as they appeared in that case, the owner of the fee had parted with all substantial value in the fee of Beverly Road by reason of his having conveyed the fee to all of the surrounding property on every side, so that all that remained to him was the fee of 60 feet of the way, subject to the easements of the abutting owner of light, air, and access, and of those adjacent owners of the fee of the way to access to their property over this way. This is merely following the rule of the Eleventh Avenue Case in effect; for I recognize that while the language of the opinion in that case attempts to lay down a contrary rule, and to hold that only a nominal award should be made in all cases, it is the judgment which is actually controlling, and that did no more than to apply the rule of the leading case. That case recognizes the fact that a mere private way, subject to private easements, has a substantial value; that it is the value of the fee and of the easements com-

bined; and that these must be paid for under the rule which forbids the taking of private property for public purposes without just compensation. The sum to be paid is to be determined without just compensation. The sum to be paid is to be determined by the tribunal provided by law for this purpose, and the only question left in a proceeding of this character is to determine the equities as between the owner of the fee and the owner of the easement. The decision in the Beverly Road Case in taking the determination of the referee under the particular facts there involved was probably correct; but it certainly does not justify the conclusion that, where a substantial award has been made and approved, this or any other court can arbitrarily say as a matter of law that the owner of the fee is only entitled to nominal damages. That is a question depending upon the facts—upon how much of the property right belongs to him; if the easement is of such a nature that it can be surrendered without substantially harming the owner of such easement, so that it might be bought for a trifling sum, as might be the case, for instance, if the owner of the easement owned an entire block, with access to highways on three sides, no other rights intervening. The public has no rights in a way such as is here involved, and the owner of the fee, in conjunction with the owner or owners of the easements, has all the rights in the land which he ever had, and it is absurd to say that such property rights are entitled to only nominal awards under any and all circumstances. They are worth just what the real estate is worth with the easements merged in a single owner—that is, what the municipality is taking—and the award belongs to the owners of the tangible and intangible property in proportion to the value of each, and this is to be determined by the peculiar facts of each case, and not by an arbitrary assumption that the fee has only a nominal value, and that the abutting owners, without fee rights, are entitled to the whole amount, because it is presumed they are going to be called upon to pay the assessments levied to compensate for the taking. I do not think the Beverly Road Case, supra, decided anything different in its results than what I am maintaining here, but, if it does, it is counter to the Eleventh Avenue Case, supra, and this being an intermediate court, and the decision not having been unanimous, I am of the opinion that it is not stare decisis here. The doctrine of stare decisis is based upon the assumption that the rules of law to which this doctrine applies have previously been determined by the court having final jurisdiction on the questions involved. For this reason, where the decision of a tribunal is subject to review by one having superior authority over it for that purpose, or the question passed upon may be passed upon by such tribunal in another case, the doctrine of stare decisis does not apply with full force until the same questions have been determined by the court of last resort. 26 Am. & Eng. Ency. of Law, 163. In this case I think the principle has been decided in accord with the views which I have expressed, and I am bound to yield obedience to the voice of authority.

It does not appear clearly what the theory of the learned referee was in awarding the entire sum to the petitioner, but it would seem that he decided as a matter of law that, the fee being in Walker, he was entitled to the money, this being evident from his reference to the fact

117 N.Y.S.—55

that "the commissioners took testimony as to the value of the land so taken only, and no testimony was introduced before them as to any damage (if any) done to the easements as to the abutting owners on each side of Decatur street." But the question was not whether there was damage to the easement. It was what part of the award should go to the owners of the easement, which they had a right to surrender; what relation the surrender value of that easement bore to the whole adjudged value of the premises. As the public authorities could not take the land without making just compensation, and no one complained of the amount of the award or objected to the confirmation of the report, the award must be deemed to represent the aggregate value of all the interests in each parcel, and the duty of making the distribution among the several parties, and determining the proportions in which the several claimants should participate, devolved upon the court. Matter of Opening of Eleventh Avenue, supra, 81 N. Y. 443. The mere determination, therefore, that Walker owned the fee, did not meet the situation. The owners of the easement were entitled to a hearing as to the value of such easement, as related to the entire award, and because this was not afforded the report of the learned referee ought not to have been confirmed.

The judgment appealed from should be reversed, with directions to the court below to return the report to the referee for a further hearing in conformity with this discussion.