## LEWISOHN v. LANSING CO. et al.

(Supreme Court, Appellate Division, First Department. May 17, 1907.)

1. EASEMENTS—IMPLICATION—WAYS.

Where the owner of a tract of land, a map of which, showing streets, had been filed in the office of the register of the county, conveyed various lots in fee, the lots being described by reference to the map, but the property conveyed extending to one-half of the streets as shown on the map on which the lots abutted, no easement being reserved in terms, each grantee received his property free from any easement in favor of the grantees of adjoining lots upon the street.

2. SAME—EXTINGUISHMENT—ADVERSE POSSESSION.

Where the owner of land in absolute possession inclosed it with a substantial fence, excluding all others from any interference with it, and there was no use of an easement over the land for 20 years, the same was extinguished.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, § 84.]

3. JUDGMENT—MATTERS CONCLUDED—MATTERS NOT IN ISSUE.

In a contest over an award to unknown owners of land in a street in a condemnation proceeding, where it was held that title was in one of the parties, but no issue was raised and no decision made as to the easement of the other in the street, the decision was not conclusive as to the existence of the easement.

4. EASEMENTS—CREATION—IMPLICATION—WAYS IN GENERAL.

A grantor, who sold lots and described them as bounded by a street running through his own land, without including in the conveyance the bed of the street, created a private easement for street purposes in favor of his grantee over the land designated as a street and of which he retained the fee; and this easement became appurtenant to the land conveyed, and followed it, unless it was in some way later extinguished.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, § 46.]

5. SAME—TERMINATION—ABANDONMENT.

Where a party had an easement in land for street purposes, his claiming an absolute title to the land was not an abandonment of his claim to an easement therein.

6. SAME.

Where a party acquired an easement in a street by grant, the fact that before the street was opened, and before there was any occasion to use it as a street, he occupied and inclosed it, affords no presumption that he intended to abandon, as against any one else, the right to insist upon his easement.

7. SAME—ADVERSE POSSESSION.

The owner of land, having appurtenant thereto and following it an easement in other land for the purposes of a street, could not hold the land in the street adversely to his claim to an easement therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, § 84.]

8. SAME.

Where a party, having an easement in land for purposes of a street, remained in possession for 10 years, and the party who held the fee to the land never wholly occupied the same, but left a passageway thereon about 20 feet wide, and for some time left the entire tract open and unoccupied, the easement was not extinguished by adverse possession.

Appeal from Special Term.

Action by Adolph Lewisohn against the Lansing Company and others. Judgment for defendants (100 N. Y. Supp. 1077), and plaintiff appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

David B. Ogden, for appellant.
Edward B. Whitney, for respondent.

SCOTT, J. The plaintiff, owner in fee of a plot of land abutting upon the northerly side of 157th street, between Broadway and the Boulevard Lafayette, in the city of New York, claims, and by this action seeks to enforce, easements of light, air, and access over the land in front of his property, constituting a part of 157th street as the same is shown on the official city map, although the street at this point has never been formally opened or acquired by the city. From a judgment dismissing his complaint upon the merits, the plaintiff appeals.

The defendant is the owner in fee of the bed of the street in front of plaintiff's property, and, claiming to hold it free from any easement in favor of plaintiff's property, has inclosed it with a fence and erected a building thereon. It is not to be disputed that, if plaintiff is entitled to the easements he claims, the structures erected by defendant are violative thereof. The property involved in this litigation, as well as that now owned by defendant, constituted part of a large tract owned at one time by Samuel Watkins, who on August 16, 1843, conveyed a tract including the southerly half of 157th street to Victor G. Audubon, and on November 15th of the same year conveyed another tract, including the premises now owned by plaintiff and the northerly half of 157th street, to Matthew Morgan. Up to this time no streets had been opened, and no official map had been filed laying out the city above 155th street, which was the northernmost transverse street shown on the map of 1807. The territory north of that street was wild woodlands, except so much thereof as was occupied by the residence of John J. Audubon and a serpentine road which led up to his house. The deed to Victor G. Audubon conveyed a tract of land extending to and bounded on the north by the center line of 157th street. It is to be noted that although this deed mentions 156th and 157th streets, and uses their center line as boundaries, it does not refer to any map or plan on which these streets were shown, nor was any such map or plan then on record. There was such a map, however, attached to the deed from Watkins to Morgan, dated November 15, 1843, upon which the streets from 156th to 160th streets, inclusive, are shown, and by express reference to which that deed was made. Whether or not Watkins and Audubon had this map in mind when the deed between them was made does not appear; but it is conceded that that map correctly shows the locus in quo at that time, and the lines of 157th street as shown on that map coincide with the lines of that street as now laid out on the official map. By these deeds, therefore, Audubon became the owner in fee of the southerly half of the street, and Morgan became the owner in fee of the northerly half; the center line of the street constituting the dividing line between their properties. At about this time or shortly thereafter a fence was erected along the center line, and it or its substitute was maintained until 1893; the half of 157th street lying south of the fence being used and occupied as a part

of the Audubon estate. In 1850 Victor G. Audubon conveyed to his mother, Lucy Audubon, the property which he had acquired from Watkins, and in 1851 she reconveyed a portion of it to him, including so much of the southerly half of 157th street as is involved in this action, reserving for herself and her heirs "a sufficient right of way through and along so much of Eleventh avenue and 156th and 157th streets as were included in her deed, for all lawful purposes, to use the same as a public road." This reservation, as we consider, confers no right upon the plaintiff. It was made only in favor of the grantor and her heirs; and, as plaintiff does not hold his title through her, he can take no benefit of any private easement under her reservation, and in any case all that is reserved is a "sufficient right of way," and not the whole street. It does not appear that Lucy Audubon or her heirs ever availed themselves of this reservation, and Victor G. Audubon continued to keep the property inclosed by a fence. After Victor G. Audubon's death, in 1860, his widow and executrix conveyed to Helen L. Grinnell a piece of property which included so much of the southerly half of 157th street as is involved here; either she or her husband apparently being then the owner of the land lying south of the street. Helen L. Grinnell established a garden over the southerly half of the street up to the fence along the center line, and maintained it with substantially the same fence until 1878 or 1879. The defendants hold title to the southerly half of the street through Helen L. Grinnell.

As to the southerly half the plaintiff relies upon the familiar and well-established rule that a description bounding property upon a street or avenue, or referring to a map upon which the street or avenue is delineated, amounts, as between the grantor and grantee, to a dedication by the grantor of the bed of the street or avenue for a street, if owned by him, and confers upon the grantee the right to use it, and perpetual easements of light, air, and access over it, whether any portion of the bed of the street or avenue be conveyed to him, or whether the fee of the whole of it be reserved by the grantor. Hence it is argued that Audubon acquired, through his deed from Watkins, not only the fee to the southerly half of the street, but also perpetual easements of light, air, and access over the northerly half, which was reserved by the grantor, and, conversely, that so much of the bed of 157th street as was in terms conveyed to Audubon by the deed from Watkins was held by him subject to a like easement in favor of the land reserved by the grantor. There can be no doubt that the rules of law upon which this argument is based are generally applicable where lots are bounded upon a street, or described by reference to a map upon which streets are shown. But these rules are rules of presumption, and rest upon an implied grant or reservation of easements for street purposes, and the presumption and implication vanish when the deed itself indicates a contrary intention upon the part of the parties to it. This very question came before this court recently, upon a state of facts strikingly similar to those in the present case, in the Matter of West 214th Street, 109 App. Div. 575, 96 N. Y. Supp. 557. That case related to property embraced in the Dyckman estate, of which a map had been made and filed showing the proposed streets and avenues. In 1860 John H.

Dyckman, the then owner, conveyed the whole tract to one Sacchi, without reference to the map and without reference to the streets and avenues shown upon it. Sacchi conveyed certain lots to the appellant's grantors by descriptions which referred to the map on file, and expressly included in the conveyance one-half of the bed of the proposed street as shown upon the map. Sacchi had other lots, which he retained and subsequently sold. The question was whether or not Sacchi had impliedly reserved, in favor of the lots retained by him, easements of light, air, and access over the bed of the street, which had been in terms conveyed to the appellant's grantors. It was held that there had been no such reservations; the court saying, through Mr. Justice Ingraham:

"No easement was expressly reserved, and if one was reserved it must be by implication. There was conveyed an estate in fee simple in and to the property conveyed, which included one-half of the street. The express terms of these conveyances are inconsistent with an intention that the street should remain open, either as a public street or for the use of the owners of the other lots. That each grantee of a lot or lots to whom was conveyed the absolute unincumbered fee of one-half the street became the owner of that property free from any easement in favor of the grantees of adjoining lots upon the street seems to me to follow from the express language used in the deeds, where there is no easement of any kind reserved to each grantee."

This language, applied to similar facts, states the rule to be applied in the present case, and seems to be a complete answer to the plaintiff's claim that the deed to Audubon of the southerly half of 157th street contained an implied reservation of easements for light, air, and access in favor of the property retained by Watkins. Even if there had been such an implied reservation, we are of opinion that the easements became extinguished by adverse possession. As soon as Audubon acquired the property, he inclosed so much of the street as was covered by his deed with a fence, and he and his successors in title not only kept it so inclosed continuously for some 50 years, but during that time used it in a manner to preclude any idea that he held it for street purposes. Thus he had an absolute deed without any express reservations, and openly and notoriously occupied the bed of the street south of the center line for purposes entirely inconsistent with its use as a street. As to so much of 157th street as lies south of the center line, the judgment in defendant's favor is right.

So far as concerns the northerly half of the street, other considerations are presented. Matthew Morgan, Watkins' grantee, in 1850 conveyed a plot to Dennis Harris, bounding it in part by the center line of 157th street, thus investing Harris with the title in fee to the northerly half of the street. In 1853 Harris conveyed a portion of the property to his son-in-law, John Dalley, by a description which bounded the plot conveyed by the northerly side of 157th street. Dalley, claiming that this deed conveyed to him the half of the street directly in front of his lot, as well as the land within the boundaries expressed in the deed, proceeded to take possession of and occupy the northerly half of the street. In November, 1868, Harris' widow and devisee conveyed to George Blake Grinnell the northerly half of the street, then actually occupied under a claim of title by Dalley. The plaintiff's title comes through Dalley; the defendant's, through Grinnell.

In 1878 the respective claims of Dalley and Grinnell to the owner-ship of the northerly half of the street came before the Court of Appeals in a contest over an award to unknown owners in a condemnation proceeding, and it was held that the title was in Grinnell. Matter of Department of Parks, 73 N. Y. 560. This is of course a conclusive determination as between the parties here, that Grinnell acquired title to the northerly half of the street by his deed from Mr. Harris. The respondent insists that it is also a conclusive adjudication that Harris had no easement over the street, in favor of his plot bounded upon it, because, if he had any such easement, he could have claimed a part of the award by virtue thereof, and that the judgment as to the disposition of the award is conclusive, not only as to what was decided, but also as to every other matter which, under the issues, the parties might have litigated. There is no doubt as to the conclusiveness of the award as between Grinnell and Dalley. Each claimed the whole award, and Grinnell prevailed. As to the subject-matter of the controversy, viz., the right to receive the award, the adjudication was final, and we do not doubt that, after being defeated in his claim to the whole award, Dalley would have been estopped from claiming any part of it from Grinnell on the ground that he had an easement, for that claim could have been made in the proceeding for the award. This is as far as the adjudication can be extended. No question was involved in that proceeding of any private easement vested in any individual. The sole question in controversy was the title to the fee of the land. The most that can be said is that neither party tendered any issue as to any easements, and no decision as to their existence was required or was made.

It is a familiar rule, supported by ample authority, that a grantor who sells lots and describes them as bounded by a street running through his own land, without including in the conveyance the bed of the street, creates a private easement for street purposes, in favor of his grantee, over the land laid out or designated as a street, and of which he retains the fee. Harris made a number of conveyances, similar, as to the manner of describing the land, to the conveyances to Dalley, in all of which he bounded the lots by the projected streets and avenues. As to these the Court of Appeals held that Harris had conveyed to his grantees private easements for street purposes of air, light, and access over the land within the lines of the projected streets, of which he retained the fee in himself. Matter of Eleventh Ave., 81 N. Y. 436. This case is a controlling authority for the proposition that. by his deed to Dalley of the property now owned by the plaintiff, Harris granted an easement for street purposes, in favor of the lot conveyed, over the northerly half of 157th street, then owned by him and of which he retained the title. These easements became appurtenant to the land conveyed to Dalley, and followed it into plaintiff's ownership, unless they were in some way extinguished.

It cannot be successfully maintained that Dalley, by claiming an absolute title in the bed of the street, abandoned his claim to an easement therein. White's Bank v. Nichols, 64 N. Y. 65; Matter of Board of Education, 24 App. Div. 117, 48 N. Y. Supp. 1061. Nor is there

any evidence in the case to support a claim that Dalley ever abandoned the easement. Whatever easement he acquired was by grant, being impliedly included in Harris' deed to him. Such an easement will not be deemed to have been abandoned by nonuser, but only upon clear and convincing proof of an intention by an owner to abandon it. Hennessy v. Murdock, 137 N. Y. 317, 326, 33 N. E. 330. The mere fact that before the street was opened, and before there was any occasion to use it as a street, Dalley occupied and even inclosed it, affords no presumption that he intended to abandon, as against any one else, the right to insist upon his easements. There seems to be a little ground for finding that the easements were ever extinguished by adverse possession. Certainly Dalley's possession was not adverse, although it may have been under an inconsistent claim. He was the owner of the dominant estate, and cannot be said to have been holding the servient estate adversely to himself. Although Grinnell obtained a deed of the northerly half of the street in 1868, Dalley remained in actual physical possession until 1878. Grinnell never wholly occupied the northerly half. In 1879 he moved the boundary fence about 10 feet north of the center line of the street, and in 1887 replaced it with a picket fence a few feet still further north; but at all times there was left a passageway about or nearly 20 feet wide, and in 1893 the whole triangle was clear of all fences.

Our conclusion is that as to the northerly half of 157th street in front of plaintiff's premises he is entitled to easements of air, light, and access, and that to this extent he is entitled to relief as prayed in the complaint.

The judgment will therefore be reversed, and a new trial granted, but without costs in this court. All concur.