By the Court. Woodruff, J.
It is possible that the views expressed in the opinion given by Mr. Justice Selden, when this ease was before the Court of Appeals, and which are especially applicable to the case as now before us, might have been withheld, and yet the same judgment of reversal have been pronounced. In this sense a portion of his opinion may be deemed obiter.
But that opinion was written with a view to the new trial which was ordered, and was evidently intended as a guide to this court in the further conduct of the cause. And bearing this in mind, we ought, perhaps, to presume that the observations he made had the sanction of the other members of the court, although not specifically adverted to by Mr.. Justice Johnson in his opinion.
If, therefore, we did not concur in those observations, we should hesitate very much before coming to a conclusion, based upon opinions opposed to that which may properly be regarded as our guide to a new trial, and judgment.
But upon the whole case we concur with Mr. Justice Selden in the result at which that portion of the opinion to which we refer would have led him, had the case, as now developed, been before that .court.
We observe, however, preliminarily, that the Court of Appeals must be deemed to have decided, that the plaintiff herein has no right of way, by necessity, over or through the alley, the obstruction of which he complains of. So far as that question is involved, the case has not been altered in any material particular. Nor has he a right of way founded in prescription, nor on an adverse user. Nor could the right of way exist as an easement while the title to the alley, and the title to the several contiguous lots, was vested in *556 the same person. No one can be said to have an easement in his own land. And where an easement has existed, it ceases when the title to the easement and the title to the land are united in the same person.
If, therefore, the easement exists, and is vested in the plaintiff, as the owner of one of the lots adjacent to the alley, it must have been created in some manner, subsequent to the death of John Beekman, who died seized of the whole of the premises in fee. But in determining whether or not the acts of John Beekman and his heirs were such that the conveyances by the heirs would operate, as between themselves and in favor of subsequent grantees, to create the easement and pass a right of way as an appurtenant to the several lots bounded thereon, the fact is of great importance, that the alley had been used as a way of ingress and egress to and from the several lots, for more than forty years prior to the death of John Beekman, in 1844, and continued to be so used until, and after the division of the property among his heirs, and thereafter, until the defendant, in 1848, made the obstruction which is the cause of the present action. And upon the rear of the lot now of the present plaintiff there was, during all this period, a dwelling house, the property of the tenant, the only access to and egress from which was through said alley-way from and into the public street, (Eldridge street) and the alley was used for such access and egress by the tenants and occupants of such house.
The opinion of Mr. Justice Selden, in the Court of Appeals, is explicit in regard to the effect and operation of such facts as these, followed by conveyances apt in form to transfer the right to a continuance of such a use.
He says:—“ The owner of several tenements may, of course, make such a disposition of their respective properties as he pleases. He may take, from either, any one of its qualities, or any use of which it is susceptible, and annex it to another; so that such quality or use shall become part and parcel of the latter, thus rendering the one tenement, pro tanto, subservient to the other; and there is no doubt, that where an owner has chosen thus to make an artificial distribution of the natural properties of" two tenements, making use of the one as subservient to the other —if, while this use and his ownership of both • tenements continues, he sell and convey the dominant tenement, with its *557 appurtenances, there being, at the time, open and visible marks of such use, an easement, corresponding to the use, will be created, and will pass by the deed as an appurtenance. In this case, there was abundant proof of the use of the alley, in connection with the plaintiff’s lot, for many years, with the consent of the owner of both tenements, and an apparent continuance of this use, up to the time of the conveyance by Foulke and wife to the plaintiff, accompanied by the necessary outward and visible marks of such use. But it does not appear that Foulke and wife were the owners of the alley when they executed the deed. The ownership by them of both tenements, was, of course, essential to the
creation of the easement as an appurtenance, at that time.....
It may, however, have been created upon some previous severance of the ownership of the two tenements, as upon the partition of the premises between the heirs of John Beekman, in which ease it would have passed, by the deed of Foulke and wife, as appurtenant to the lot.......As against Foulke and wife, the
plaintiff has shown, I think, a clear right to the use of the alley; but, as against the other heirs of Beekman, or their grantees, he has shown none at all. If either the title to the alley itself, or a right to its use, in connection with lot 108, was conveyed to Foulke and wife by the partition deed, then such right passed as an appurtenance by the deed to the plaintiff.”
The application of these views to the case, as exhibited on the second trial, is quite obvious. The, title to the alley and the several contiguous lots, was in the heirs of John Beekman; their deed to Mrs. Foulke is now produced, and is in the very words of the deed afterwards executed by Foulke and wife to the plaintiff. The latter deed, in connection with the previous user, and the continued outward and visible marks of such use, is, in the opinion quoted, deemed sufficient to have vested in the plaintiff the right of way, had Foulke and wife then owned both the alley and the premises described.
By the same rule, the conveyance by the heirs, who did own both, must, in connection with the same extrinsic facts, be deemed to vest in Mrs. Foulke the right to the use of the alley, as an appurtenant to the premises granted; and the same, therefore, passed to the plaintiff, by the conveyance of the latter to him.
We are not inclined to rest this view of the effect of the deed *558 to Eoulke and wife, upon the mere force of the word “ appurtenances,” in that deed. The right of way did not exist, as an easement, so long as the title to the lot (108) and the alley were both vested in the heirs of Beekman; and if the alley was not mentioned or referred to in the deed, in any manner other than by the word “appurtenances,” we should deem it at least doubtful whether the Court of Appeals intended to hold, that the previous .use of the alley had so detached it from the other lots, or attached it to the plaintiff’s lot, that it would pass by the mere force of that term. (1 Bos. & Pul. 371; 5 Barn. & Aid. 830; 1 Taunt. 206.)
But the conveyance to Eoulke and wife, describes the premises as'running “along the said alley-way.”
In Herring v. Fisher, (1 Sand. S. C. R. 344,) such terms were held to be sufficient to convey the fee to the centre of the road; and it was also held, that even if the point whence the boundary run along the road, was described as “ at the side of the road,” (as, in the case before us, the precise line is described as running to the easterly side of the alley,) the same construction would prevail. And see Badeau v. Mead, & Holmes, (14 Barb. 328;) and also, Sizer, et ux, v. Devereux, (16 Barb. 160,) and cases cited in these cases, respectively. (Smiles v. Hastings, 24 Barb. 44.)
It is sufficient for the purposes of this case, that, by the deed from the heirs of Beekman, Eoulke and wife obtained the right to use the alley, as such.
The judgment should be affirmed.