(17 Misc. Rep. 452.)

## KENYON v. HOOKWAY.

(Supreme Court, Special Term, Onondaga County. June, 1896.)

DEEDS—EFFECT—REFERENCE TO UNOPENED STREET.

A deed describing the premises conveyed, "together with the appurtenances," as bounded by a street, title to which was in the grantor, and which was actually occupied by him, gives the grantee the right to have the street kept open, though it did not previously exist, except on maps, and though the grantor, before making the deed, told the grantee that he did not intend to give him the easement.

Action by George G. Kenyon against Willard E. Hookway for trespass on plaintiff's real estate. Judgment for defendant.

E. C. Wright, for plaintiff.
W. S. Andrews, for defendant.

HISCOCK, J.  This action is brought nominally to recover for an alleged trespass committed by defendant upon land lying upon the easterly boundary of premises heretofore conveyed to him by plaintiff.  The real and substantial question, however, is whether the land upon which he went at the time of such alleged trespass is, as between him and plaintiff, a street or highway.  As a matter of fact, no actual evidence was given upon the trial of the trespass complained of, but it was admitted and conceded by counsel upon both sides that, if it should be found that the land upon which the defendant went was not a street or highway, he was guilty; that, if it was, he was not.  The premises involved in the action are situate in the city of Syracuse.  They are bounded upon the south by Water street, a public highway.  Running from Water street south, Lemon street is a public highway, and used as such.  Northerly from Water street, and upon the easterly boundary of the premises conveyed by plaintiff to the defendant, it has not been used as a public street for many years at least.  It does not even appear that it was ever dedicated to or accepted by the city as a public street, or used as such.  Upon two ancient maps of this locality, the one filed in the office of the secretary of state, and the other in the surveyor general's office, Lemon street, however, does appear regularly continued north of Water street, and along the easterly boundary of the premises conveyed to defendant, and most of the conveyances in the chain of title to plaintiff refer to said maps.  Some time prior to May 18, 1894, plaintiff had acquired the title both to the premises subsequently conveyed to the defendant and to those comprised within the boundaries of and upon the other side of said Lemon street, as laid out northerly of Water street upon said maps.  This title came to him through two chains of title.  The deed immediately to him, in one chain of title at least, refers to one of the ancient maps above mentioned, and the conveyances to his grantors under the other chain of title refer to said maps.  April 17, 1894, plaintiff made a contract with defendant, by which he agreed "to sell, by warranty deed, to said Hookway, at any time within six months from the date hereof that said Hookway so demands, all that tract or parcel of land bounded on the south by East Water street, on the east by west line of Lemon street, on the north by Erie Canal lands, and west by lands owned by Thomas Merriam," and upon May 16, 1894, executed a warranty deed whereby he with his wife conveyed to said Hookway premises bounded as follows:

"Beginning at a point in the west side of what appears to be the extension of Lemon street, and at the southeast corner of block 261; thence north 45.87 feet, to the blue line of the Erie Canal; thence west, along said blue line, 200 feet; thence south, at right angles to said blue line, 45.87 feet, to the north line of East Water street; thence east, along said north line, 200 feet, to the place of beginning,—said premises being at the corner of East Water street and the continuance of Lemon street.  Together with the appurtenances and all the estate and rights of the party of the first part in and to said premises."

After acquiring title to these lands, and prior to the conveyance to defendant, plaintiff had been accustomed to use them (including those within the lines of said Lemon street north of Water street)

as a lumber yard, piling lumber thereon, etc.; and, at the time when the above contract for the sale of said premises to defendant was made, plaintiff undisputedly said to him: "Mr. Hookway, I want you to understand frankly that I claim that land adjoining this property that we are talking about. There has never been a street there. I have always used it for a lumber yard, and it was used for a lumber yard before I got it; and there is no street there, and I intend to hold it,"—in response to which "Mr. Hookway laughed, and said he would take his chances on that." Subsequent to the conveyance, defendant requested plaintiff to move some lumber within the lines of said street, away from his building, and paid him for so doing.

It seems to me that upon all these facts, and under the contract and conveyance by plaintiff which describe the premises conveyed to the latter as having Lemon street as the easterly boundary thereof, defendant acquired the right to have said street exist and kept open for the benefit of his lot. It is not necessary to go to the extent of holding that he had the right to have it opened north from Water street as a public street or highway; because I do not think that he did acquire such a right. But when he received his conveyance from plaintiff, describing the lands conveyed, in substance, as bounded upon one side by Lemon street, and conveying with said premises all the appurtenances, etc., of said premises, it seems to me that he acquired the right to have Lemon street kept open to the extent of affording the usual and ordinary rights of light and air and a means of passage to and from the premises conveyed, as one of such appurtenances. It is probable that, in drawing this deed, the draftsman had in mind and intended to refer to the ancient maps hereinbefore and in the deeds in the chain of title referred to; for, inasmuch as there was no actual, physical extension of Lemon street north of Water street, the words in the description, "Beginning in the west side of what appears as the extension of Lemon street," etc., may be naturally presumed to refer to what appeared upon said maps constantly mentioned in previous deeds.

It was not seriously disputed by plaintiff's counsel that a person conveying premises by description in terms bounding them by a street, or referring to a plat or map showing such street, the title to which he also owns, ordinarily gives his grantee the right to insist upon the existence and enjoyment of such street. But in this case he points to the prior use of the lands comprised within the boundaries of Lemon street as laid out, and to the conversation had by plaintiff with defendant at the time of making the contract of sale, as establishing a different rule. This use and conversation amounted, in substance, to notifying defendant before his purchase that the land had never been used as a street; that plaintiff had always used it for his private purposes, and intended to continue so to do, or, as he expressed it exactly, "There is no street there, and I intend to hold it." Hookway could hardly be said by his reply to plaintiff's suggestion to have assented or agreed to this future holding and use of the land by plaintiff, even if that were material; but I do not regard that as material or conclusive here.

Plaintiff having acquired and then owning all of these premises, including the disputed street, he had a right to so convey to defendant as either to exclude him from any right or claim to a street, or to give him a right or claim to one. The extent of his conveyance was subject to his control, and if, notwithstanding his prior use of the lands within the street for private purposes, he finally decided to so word his conveyance as to give defendant the privilege of a street upon his boundary, he had the perfect power and right so to do; and, after he had given defendant a written contract and conveyance, the latter had a right to stand and insist upon the terms of those, rather than upon what had taken place prior thereto. There seems to be a variance between the prior negotiations and intentions of plaintiff, as expressed therein, and the final written contract. Under the former, and with the use of the premises before him and the notice by plaintiff to him, defendant very likely would be excluded from claiming the right to have this street. But subsequently plaintiff made the written contract, and executed the deed, which, under familiar rules, must govern and prevail. These, it seems to me, do create an easement in the land called "Lemon Street" in favor of the defendant, which plaintiff cannot avoid by showing either that the street did not previously exist except upon the maps, or that he told defendant before the written contract that he did not intend to give him such easement. In re Eleventh Ave., 81 N. Y. 436; Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052; Haight v. Littlefield, 147 N. Y. 338, 41 N. E. 696.

The case of King v. City of New York, 102 N. Y. 172, 6 N. E. 395, especially relied upon by plaintiff's counsel, seems to involve a question somewhat different from that presented here. In that case proceedings were instituted by the public authorities to close a public highway, and dispute arose as to whether the damages for extinguishing such public use should be paid to the person owning the premises injured by such closing at the time thereof, or to his subsequent grantees. And, among other things, it was said as to such grantees that "merely bounding premises by a highway for purposes of description, and where it is referred to as any fixed mark or monument may be, is very different from selling with reference to a map or plot on which the grantor has laid out streets and made a dedication, and exposed himself to the equities of an estoppel; and then the road was in fact closed when the deed was made, and Brennan knew or was bound to know that the public highway no longer existed." The reasoning employed in that action, it seems to me, may be very well applied to a conveyance bounded by a public highway which had ceased to exist at the time of the conveyance, in a proceeding to award damages for extinguishment as a public highway, and yet not be controlling of the case at bar. Grounds are apparent why it might be held that a grantor referring in his deed to a highway, as in the King Case, did not warrant the existence of a public highway, and it still be decided that, by conveying a portion of premises owned by him with reference to a street running through them, he did create certain private

easements in favor of his grantee in the land called and represented as a street. The cases above cited seem to recognize and uphold the latter proposition, without any reference to the former.

These views entitle defendant to judgment dismissing plaintiff's complaint, with costs, and render unnecessary a consideration of the further contention made on behalf of defendant, that, under the description in the conveyance to him, he acquired the fee to the middle of Lemon street, as laid out on the map.

Judgment for defendant, with costs.