and disbursements to be paid out of the proceeds of the sale. The sale is vacated and a resale ordered. A reference is ordered to Lockwood R. Doty, Esq., of Geneseo, Livingston county, N. Y., to take testimony as to the purchaser's payments and expenditures, and also his receipts, income and advantages which he has derived from the sale. Upon the coming in and confirmation of the referee's report, the balance, if any, found due to the purchaser, shall be paid out of the avails of the sale, prior to the payment of the first mortgage.

---

GEORGE G. KENYON, Appellant, *v.* WILLARD E. HOOKWAY, Respondent.

*Deed — when easements are created in a street shown on ancient maps but never dedicated or used — merger in the deed of prior inconsistent statements of the grantor.*

The owner of lands used as a lumber yard, lying upon both sides of, and within the lines of what was indicated upon ancient maps, referred to in the deeds in his chain of title, as "Lemon street," but which apparently had never been dedicated or used as a public street, executed a contract by which he agreed to convey premises bounded "on the east by west line of Lemon street," but at the time of executing the contract said to the contract vendee, "I want you to understand frankly that I claim that land adjoining this land that we are talking about. There has never been a street there. I have always used it for a lumber yard before I got it, and there is no street there and I intend to hold it," whereupon the vendee laughed and said he would take the chances. The deed executed in pursuance of the contract described the premises as "Beginning at a point in the west side of what appears as the extension of Lemon street * * * said premises being at the corner of East Water street and the continuation of Lemon street."

*Held,* that under the contract and deed the grantee acquired the right to have Lemon street kept open to the extent of affording to him the usual and ordinary rights of light and air and a means of passage to and from the premises conveyed;

That the deed prevailed over the intention of the grantor as expressed in the previous negotiations.

APPEAL by the plaintiff, George G. Kenyon, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 24th day of June,

1896, upon the decision of the court, rendered after a trial before the court without a jury, at the Onondaga Trial Term.

*Hogan & Wright*, for the appellant.

*W. S. Andrews*, for the respondent.

Judgment affirmed, with costs, on the opinion of HISCOCK, J., delivered at Trial Term.

All concurred.

The following is the opinion of HISCOCK, J.:

HISCOCK, J.:

This action is brought nominally to recover for an alleged trespass committed by defendant upon land lying upon the easterly boundary of premises heretofore conveyed to him by plaintiff. The real and substantial question, however, is whether the land upon which he went at the time of such alleged trespass is, as between him and plaintiff, a street or highway. As a matter of fact no actual evidence was given upon the trial of the trespass complained of, but it was admitted and conceded by counsel upon both sides that if it should be found that the land upon which the defendant went was not a street or highway he was guilty; that, if it was, he was not.

The premises involved in the action are situate in the city of Syracuse. They are bounded upon the south by Water street, a public highway. Running from Water street south, Lemon street is a public highway and used as such. Northerly from Water street, and upon the easterly boundary of the premises conveyed by plaintiff to the defendant, it has not been used as a public street for many years at least. It does not even appear that it was ever dedicated to, or accepted by, the city as a public street, or used as such. Upon two ancient maps of this locality, the one filed in the office of the Secretary of State and the other in the Surveyor-General's office, Lemon street, however, does appear regularly continued north of Water street and along the easterly boundary of the premises conveyed to defendant, and most of the conveyances in the chain of title to plaintiff refer to said maps.

Some time prior to May 18, 1894, plaintiff had acquired the title both to the premises subsequently conveyed to the defendant and to those comprised within the boundaries of, and upon the other side of, said Lemon street as laid out northerly of Water street upon said maps. This title came to him through two chains of title. The deed immediately to him in one chain of title at least, refers to one of the ancient maps above mentioned, and the conveyances to his grantors under the other chain of title refer to said maps.

April 17, 1894, plaintiff made a contract with defendant, by which he agreed " to sell by warranty deed to said Hookway at any time within six (6) months from the date hereof that said Hookway so demands, all that tract and parcel of land bounded on the south by East Water street, on the east by west line of Lemon street, on the north by Erie canal lands and west by lands owned by Thomas Merriam;" and upon May 18, 1894, executed a warranty deed whereby he with his wife conveyed to said Hookway premises bounded as follows : " Beginning at a point in the west side of what appears as the extension of Lemon street and at the southeast corner of Block 261; thence north 45 87-100 feet to the blue line of the Erie Canal ; thence west along said blue line 200 feet ; thence south at right angles to said blue line 45 87-100 feet to the north line of East Water street ; thence east along said north line 200 feet to the place of beginning, said premises being at the corner of East Water street and the continuation of Lemon street. Together with the appurtenances and all the estate and rights of the party in and to said premises."

After acquiring title to these lands, and prior to the conveyance to defendant, plaintiff had been accustomed to use them (including those within the lines of said Lemon street north of Water street) as a lumber yard, piling lumber thereon, etc. And at the time when the above contract for the sale of said premises to defendant was made, plaintiff undisputedly said to him : " Mr. Hookway, I want you to understand frankly that I claim that land adjoining this land that we are talking about. There has never been a street there. I have always used it for a lumber yard before I got it, and there is no street there and I intend to hold it." In response to which " Mr. Hookway laughed and said he would take the chances." Subsequent to the conveyance defendant requested plaintiff to move

some lumber within the lines of said street away from his building and paid for so doing.

It seems to me that upon all these facts and under the contract and conveyance by plaintiff which describe the premises conveyed to the latter as having Lemon street as the easterly boundary thereof, defendant acquired the right to have said street exist and kept open for the benefit of his lot. It is not necessary to go to the extent of holding that he had the right to have it opened north from Water street as a public street or highway, because I do not think that he did acquire such a right. But when he received his conveyance from plaintiff describing the lands conveyed in substance as bounded upon one side by Lemon street and conveying with said premises all the appurtenances, etc., of said premises, it seems to me that he acquired the right to have Lemon street kept open to the extent of affording the usual and ordinary rights of light and air and a means of passage to and from the premises conveyed, as one of such appurtenances.

It is probable that in drawing this deed the draughtsman had in mind and intended to refer to the ancient maps hereinbefore, and in the deeds in the chain of title, referred to. For inasmuch as there was no actual, physical extension of Lemon street north of Water street the words in the description "Beginning at a point in the west side *of what appears* as the extension of Lemon street," etc., may be naturally presumed to refer to what appeared upon said maps constantly mentioned in previous deeds.

It was not seriously disputed by plaintiff's counsel that a person conveying premises by a description in terms bounding them by a street, or referring to a plat or map showing such street, the title to which he also owns, ordinarily gives his grantee the right to insist upon the existence and enjoyment of such street. But in this case he points to the prior use of the lands comprised within the boundaries of Lemon street as laid out and to the conversation had by plaintiff with defendant at the time of making the contract of sale as establishing a different rule. This use and conversation amounted in substance to notifying defendant before purchase that the land had never been used as a street; that plaintiff had always used it for his private purposes and intended to continue so to do, or, as he

expressed it exactly, " There is no street there and I intend to hold it." Hookway could hardly be said by his reply to plaintiff's suggestion to have assented or agreed to this future holding and use of the land by plaintiff even if that were material, but I do not regard that as material or conclusive here. Plaintiff having acquired and then owning all of these premises, including the disputed street, he had a right to so convey to defendant as either to exclude him from any right or claim to a street, or to give him a right or claim to one. The extent of his conveyance was subject to his control, and if, notwithstanding his prior use of the lands within the street for private purposes, he finally decided to so word his conveyance as to give defendant the privilege of a street upon his boundary, he had the perfect power and right so to do, and after he had given defendant a written contract and conveyance, the latter had a right to stand and insist upon the terms of those rather than upon what had taken place prior thereto. There seems to be a variance between the prior negotiations and intentions of plaintiff as expressed therein, and the final written contract. Under the former and with the use of the premises before him and the notice by plaintiff to him, defendant very likely would be excluded from claiming the right to have this street. But subsequently plaintiff made the written contract and executed the deed which, under familiar rules, must govern and prevail. These, it seems to me, do create an easement in the land called Lemon street in favor of the defendant, which plaintiff cannot avoid by showing either that the street did not previously exist except upon the maps, or that he told defendant before the written contract that he did not intend to give him such easement. (*In Matter, etc., Eleventh Ave.*, 81 N. Y. 436; *Holloway* v. *Southmayd et al.*, 139 id. 390; *Haight et al.* v. *Littlefield et al.*, 147 id. 338.)

The case of *King* v. *The Mayor, etc.* (102 N. Y. 172), especially relied upon by plaintiff's counsel, seems to involve a question somewhat different from that presented here. In that case proceedings were instituted by the public authorities to close a public highway and dispute arose as to whether the damages for extinguishing such public use should be paid to the person owning the premises injured by such closing at the time thereof, or to his subsequent grantees. And amongst other things it was said as to such

grantee that "merely bounding premises by a public highway for purposes of description, and where it is referred to as any fixed mark or monument might be, is very different from selling by reference to a map or plat on which the grantor has laid out streets and made a dedication and exposed himself to the equities of an estoppel; and then the road was in fact closed when the deed was made to Brennan, who knew, or was bound to know, that the public highway no longer existed." The reasoning employed in that action, it seems to me, may be very well applied to a conveyance by whose terms the premises conveyed are bounded by a public highway which had ceased to exist at the time of the conveyance, in a proceeding to award damages for extinguishment as a public highway, and yet not be controlling of the case at bar.

Grounds are apparent why it might be held that a grantor referring in his deed to a highway, as in the *King* case, did not warrant the existence of a public highway, and still be decided that, by conveying a portion of premises owned by him with reference to a street running through them, he did create certain private easements in favor of his grantee in the land called and represented as a street. The cases above cited seem to recognize and uphold the latter proposition without any reference to the former.

These views entitle defendant to judgment dismissing plaintiff's complaint, with costs, and render unnecessary a consideration of the further contention made on behalf of defendant, that under the description of the conveyance to him he acquired the fee to the middle of Lemon street as laid out on the map.