ARTHUR E. COLLINS, Respondent, *v.* HARLOW J. BARKER et al., Appellants.

ARTHUR E. COLLINS, Respondent, v. SNYDER REALTY CO., INC., Appellant.

Third Department, July 7, 1955.

*Warren W. Rommel* for Harlow J. Barker and another, appellants.

*Warren W. Rommel* and *Duncan B. Kaye* for Snyder Realty Co., Inc., appellant.

*Edward M. Murray* for respondent.

FOSTER, P. J. These are appeals from two judgments entered upon the report of a private Referee. The actions involve plaintiff's asserted right to use an alleged street or thoroughfare

called Main Avenue that is said to run through a parcel of land situated in the town of Brunswick, Rensselaer County. Except for different defendants the actions are practically identical. The judgments appealed from enjoin and restrain the defendants from interfering with plaintiff's asserted right of way.

In 1877 Martha J. Young and William Collins owned what was called the Fowler Farm, consisting of forty-eight acres which had a northerly frontage on the Pittstown Turnpike. Its southerly line ran along the north bank of the Poestenkill Creek. In that year Young and Collins partitioned this tract in such a manner that the easterly thirty and one-third acres went to Collins and the westerly seventeen and two-thirds acres were retained by Mrs. Young. The situation then was approximately as shown by the following diagram A.

PITTSTOWN TURNPIKE

| Young | Collins |
|---|---|
| 17 2/3 A. | 30 1/3 A. |

Thereafter and on July 30, 1878, Collins filed a map subdividing his parcel into ninety-four numbered lots, seven irregular lots lettered A through G, five lots without number or letter and two streets named Main Avenue and Fowler Avenue. Main Avenue was shown on his map as forty-five feet wide, running north and south, with its northerly terminus at the Pittstown Turnpike and its southerly terminus at the north bank of Poestenkill Creek.

In August, 1878, Collins conveyed lot A in the subdivision to William C. Winne. On July 1, 1880, he conveyed a lot without number or letter adjoining on the south of lot A to Alida M. Winne. These two lots together contained about two acres and were held as one parcel. They are not now owned by the plaintiff and are not directly involved in these actions, but it may be significant that they abutted on the west side of Main Avenue as laid out on the Collins map. At this juncture the situation was as shown by the following diagram B.

On March 28, 1883, Collins conveyed all his remaining land within his subdivision to John Lee, by acreage and without any reference to a subdivision map. The description in this deed excepted the two Winne lots heretofore mentioned. In the same month — March, 1883 — John Lee conveyed the same premises to John Sherry. On March 9, 1888, Martha J. Young conveyed her seventeen and two-third acres to John Lee, who, in turn, on April 14, 1888, conveyed the same to John Sherry. By this time John Sherry owned all of the original Fowler Farm except the two lots conveyed by Collins to the Winnes.

In May, 1888, John Sherry conveyed four acres to William E. Smith. On a map which is plaintiff's Exhibit 5 the Smith lot is shown fronting on the Pittstown Road and immediately to the east of the Winne lots with a strip of land between. The deed to Smith apparently did not mention the old Collins map, but in any event it is not now owned by the plaintiff nor is it the subject of these actions. It would seem clear however that whoever owns the Winne lots can assert a right to the use of a forty-five foot street because those lots were sold by reference to the Collins map.

John Sherry died on December 26, 1894, seized and possessed of the Fowler Farm and other farm lands except the Winne and Smith parcels theretofore sold off. He devised his holdings in equal shares to his three children, Arthur G. Sherry, Norman B. Sherry and Charlotte E. Raymond. On August 2, 1909, the Sherry children deeded a parcel of sixteen and eighty-seven one-hundredths acres, which was a part of the old Collins subdivision, to Andrew Diehl. This deed made no mention of the old Collins map. According to plaintiff's Exhibit 5 this parcel ran from the southerly line of the Smith lot to the creek and apparently its western boundary was approximately the eastern boundary of what Collins had designated on his map as Main Avenue. In any event Diehl conveyed this parcel back to Arthur G. Sherry in October, 1912. The remainder of the land held by John Sherry was partitioned by a judgment of the Supreme Court in 1910, and this partition judgment set off a parcel of twenty-six and twelve one-hundredths acres to Arthur G. Sherry. Thus after 1912, when Diehl conveyed the parcel of sixteen and eighty-seven one-hundredths acres to him, Arthur G. Sherry became the owner of all that which originally had been the old Fowler Farm, except the Winne and Smith lots. The partition judgment by which Arthur G. Sherry acquired the

tract of twenty-six and twelve one-hundredths acres made no mention of the old Collins map nor did it refer to Main Avenue. The situation then was approximately as follows, diagram C.

PITTSTOWN TURNPIKE

26.12a.

(partition)

MAIN AVENUE

16.87 A.

Diehl

ARTHUR G. SHERRY

On September 3, 1920, Arthur G. Sherry conveyed a tract of twenty-five and five-tenths acres to George H. Snyder, Joseph J. Murphy and Cornelius F. Burns. This parcel consisted of the twenty-six and twelve one-hundredths acres which Sherry had acquired in the partition action, less that portion of it which comprised Main Avenue as shown on the old Collins map. By a series of mesne conveyances plaintiff ultimately acquired title to this parcel. The conveyance from Sherry to Snyder, Murphy and Burns is the decisive deed as I view it in plaintiff's chain of title and the key to the solution of this controversy. It is plaintiff's Exhibit 6 and the description contains the following language " thence south 1° 30' east

489 feet to the southwest corner of Winne land; thence along the southerly side thereof north 87° 30' east 188 feet to the *west side of Main Avenue, so designated; thence along the west side of Main Avenue extended southerly south 3° 20' east 1120 feet to the north bank of Poestenkill* ". (Italics supplied.)

In July, 1923, Arthur G. Sherry conveyed to George H. Snyder a large tract of land which included the sixteen and eighty-seven one-hundredths acre parcel shown on diagram C and also embraced the area shown as Main Avenue as shown on the old Collins map. This tract, except for certain building sites conveyed out, was acquired by the defendant Snyder Realty Co., Inc., in 1950. In April, 1950, the defendants Barker in the first action purchased a residential building site from the Snyder Realty Co., Inc., which included the southerly tip of Main Avenue as the same was laid out on the old Collins map. The Barker deed designated Main Avenue as a fifteen-foot private roadway running from the Pittstown Road to the north boundary of the lands conveyed.

Plaintiff did not prove any right of way by prescription in my judgment, and hence that phase of the case can be immediately eliminated. I think it also must be said that the subdivision map of Collins made in 1878 was abrogated by him when he conveyed by acreage to John Lee in March, 1883, except of course as to the Winne lots. Therefore plaintiff's right to the use of Main Avenue so called must depend upon an express grant, by implication or estoppel. There is no evidence of an express grant as far as I can determine. The essentials of an easement by implication on the severance of unity of ownership are somewhat difficult to establish and I doubt if a judgment for the plaintiff could rest soundly on such a basis in these cases (*Heyman* v. *Biggs,* 223 N. Y. 118). But when we come to the doctrine of estoppel I think plaintiff's claim has a firm foundation. It is a rather well-established rule that when a grantor conveys land bounded on a street or way over his other land he and those claiming under him are estopped to deny the existence of such street or way (*Ranscht* v. *Wright,* 9 App. Div. 108, affd. 162 N. Y. 632). In these cases there are two elements which appear to bring the plaintiff's claim within this principle. First there is the description in the deed from Sherry to Snyder, Murphy and Burns (plaintiff's Exhibit 6), which bounded the east side of the parcel conveyed by Main Avenue extended; and second, there is respectable proof in the record that Main Avenue, so called, or at least a substantial part thereof was actually used over the years by wayfarers both in vehicles and on foot. The

same parcel conveyed by Sherry and bounded in part by Main Avenue extended was leased from 1932 to 1943 to the Troy Horse Show Association, and there is testimony that patrons of the association used Main Avenue so called at various times as a means of ingress and egress to the Pittstown Road. This testimony of user is not to be considered for prescriptive purposes but simply to show that a road of some kind actually existed. With a road in existence the reference to it as a boundary in the Sherry deed makes a strong case for the plaintiff. Sherry owned the whole tract then and the first severance deed must be construed against him for the benefit of his grantees where there is any doubt or ambiguity in the language of the deed.

Defendants recognize the rule that where a grantor conveys land described as bounded by a street, road or way, which is owned by the grantor he impliedly grants an easement in such street, road or way; but they argue that the rule will not be applied where the intention of the parties is otherwise. This limitation of the rule is doubtless correct, but to apply it in this case one must depend wholly upon the testimony of the witness Snyder who is very much interested in the event. He was one of the grantees in the first severance deed, and later acquired individually the remaining part of the Sherry lands. Quite evidently the Referee was not impressed by his testimony to the effect that Main Avenue was never used as a road or way for he found the use of Main Avenue by the plaintiff and his predecessors in title was '' by a definite and well defined route.'' As pointed out there is respectable testimony to support this finding, and we find no compelling reason to reject the Referee's evaluation of Snyder's testimony with regard to nonuser.

In conjunction with the foregoing considerations it should be observed that the name '' Main Avenue '' came into existence with the subdivision map filed by the former owner Collins. This genesis has some significance we think. The nomenclature did not arise from user or common repute. It came first from the subdivision map, the user and common repute came later. Thus we think it a fair inference at least that when Sherry bounded his conveyance to Snyder, Murphy and Burns by Main Avenue extended he impliedly recognized it as the Main Avenue laid out on the old Collins map. The expression '' Main Avenue extended '' must have referred to an extension of the forty-five foot street bounding the Winne lots on the east. At least the grantees of Sherry would be entitled to that construction in the absence of cogent proof to the contrary.

Moreover in the next deed from Sherry to Snyder, dated July 18, 1923, which embraced the remainder of the common premises there was inserted this significant language: " Subject, however, to the rights, if any of the adjoining owners in the part of said premises, referred to as Main Ave., in the conveyances heretofore made to Winne and to Snyder and others ". Thus, the grantee of this parcel, and his subsequent grantees, had notice at least of the existence of a possible easement.

In view of the foregoing the judgments entered upon the report of the Referee should be affirmed, with costs.

COON, HALPERN, IMRIE and ZELLER, JJ., concur.

Judgments affirmed, with costs.