# FOURTH DEPARTMENT, JUNE, 1958

## (June 19, 1958)

■ JOHN TAROLLI, Respondent, v. WESTVALE GENESEE, INC., et al., Appellants.

APPEAL from a judgment of the Supreme Court in favor of plaintiff, entered August 13, 1957, in Onondaga County, upon a decision of the court on a trial at Equity Term without a jury.

Judgment affirmed, with costs.

HALPERN, J. (dissenting). The question before us is whether, under the circumstances of this case, a conveyance describing a parcel of land as bounded on one side by a road, the fee of which was owned by the grantor, gave rise to an easement by implication entitling the grantee to use the road.

The facts are virtually undisputed. They are as follows: For several decades, Frederick R. Hazard owned a large tract of land known as the Hazard Estate, which was bounded on the south by West Genesee Street, and on the west by Orchard Road, in the village of Solvay, New York. The tract was over 50 acres in extent. There was a private road running diagonally across the property in a northwesterly direction from West Genesee Street to Orchard Road; this road was used principally as a means of access to the Hazard residence located in the middle of the tract. The record does not disclose when the road was first established, but it appears that it was in existence for some time prior to March 30, 1928. The abstract of title which is in evidence contains a description taken from a deed bearing that date, which refers to the "Hazard private road". After the death of Frederick R. Hazard and his wife, their heirs and devisees conveyed most of the tract by various deeds to a corporation organized by them and known as the Upland Farms, Incorporated, on October 13, 1936. These deeds also refer to the "Hazard private road".

The Upland Farms, Incorporated, sold all the land on the west side of the Hazard road between 1944 and 1950, to various grantees. The most southerly parcel, lying at the intersection of the private road and West Genesee Street, was conveyed to one Fred Rein, by deed dated September 5, 1950. The parcel was described by metes and bounds, one course running along the west line of the private road which was referred to in the deed as a "proposed road". By this term, the grantor presumably meant to refer to a proposed *public* road, since the private road was already in existence. According to

the testimony of Mr. Rein, there was a gate of a primitive kind across the road at West Genesee Street, consisting merely of two strands of wire. When he started to use the private road as a means of access to the northerly portion of his premises in 1952, he removed the gate and it was never replaced. He used the premises for the storage of vehicles and of tree nursery products and he regularly used the private road as a means of access to the northerly part of his premises by trucks and cars.

In 1951, the Upland Farms, Incorporated, sold the northerly part of the lands lying east of the private road to the plaintiff, John Tarolli. On January 18, 1952, it sold all its remaining lands to Tarolli, running down to West Genesee Street. In this conveyance, it included the strip of land which had been used as a private road, running all the way from West Genesee Street to Orchard Road. However, the grantor exacted from Tarolli an agreement that he would dedicate the strip of land for road purposes when a dedication to the public became feasible and that, in the meantime, the abutting property owners would be permitted to use the road. This agreement was expressed in the deed as follows: " It is further understood and agreed that the party of the second part would dedicate for road purposes only, a strip of land sixty (60') feet in width along the westerly edge of the above described property extending from West Genesee Street northerly and westerly to Orchard Road and said strip of land is dedicated and restricted to said use for road purposes. The above described property is also subject to any and all existing rights of abutting property owners in and to said existing roadway ".

Subsequently, on March 3, 1954, the plaintiff had a subdivision map prepared showing a proposed subdivision of the northerly part of the tract and showing the private road running northerly from West Genesee Street. This map was filed with the Syracuse Planning Board on March 23, 1954. Thereafter, on April 21, 1954, the plaintiff entered into a contract with the defendant Westvale Genesee, Inc., for the sale of all the frontage which he owned on West Genesee Street, except the 60-foot strip used as a private road. (This sale contract replaced an earlier sale contract made on December 14, 1953, with one Thomas S. Reges, which had been assigned to the defendant Westvale Genesee, Inc.) The parcel contracted to be sold was situated on the east side of the private road directly opposite the property of Mr. Rein. The parcel was 376.11 feet in width measured along its southerly line on West Genesee Street, and was 460.02 feet in width on the northerly line and was about 500 feet in depth. The private road constituted the westerly boundary of the parcel. On its easterly boundary, the parcel adjoined the property of Joseph Albanese, one of the defendants in this action, who was a principal stockholder of the defendant Westvale Genesee, Inc., and who had acquired his parcel of land by deed from the Hazard heirs prior to their conveyance of the remainder of the tract to the Upland Farms, Incorporated.

The description in the deed from the plaintiff to Westvale Genesee, Inc., (herein sometimes referred to as the defendant) dated April 21, 1954, read as follows: " Beginning at a point * * * which point of beginning is also the southwest corner of property now or formerly owned by Joseph Albanese; running thence * * * west along the north line of W. Genesee Street, 376.11 feet to a point; running thence northerly along the east boundary of a private road on a curve to the left, which curve has a radius of 1749.12 feet, a distance of 506.92 feet to a point; running thence * * * east 460.02 feet to a point, which point is in the west line of the Albanese property aforesaid; running thence south * * * 500.12 feet along the west line of the Albanese property to the north line of W. Genesee Street and the place of beginning ".

The attorney for the grantee testified that, in examining title, prior to the closing of the sale, he had come across and read the 1952 deed from the Upland Farms, Incorporated, to Tarolli, containing the agreement by Tarolli to dedicate the road and to allow the existing abutting property owners to use it in the meantime. He had also examined the map filed with the Syracuse Planning Board and had found that, in recognition of his agreement, Tarolli had planned to dedicate the road running northerly from Genesee Street for a distance of over a thousand feet.

It also appears that a survey of the premises dated April 13, 1954, was given to the grantee by the grantor, pursuant to the provisions of the original contract requiring the seller to furnish "a detailed survey". The plaintiff's attorney stated upon the trial that this survey "accompanied the transaction". The survey showed a 60-foot road running along the westerly boundary of the parcel to be conveyed, separating it from the land of Fred Rein. This survey was made the subject of a specific finding in the trial court's decision, reading as follows: "This [the survey] contains a description of the property by metes and bounds and it lays out the 'road' so that its easterly line is Westvale's westerly boundary. * * * The width of the 'road' is marked 60 feet".

It also appears that, prior to the closing of the sale, there were negotiations between the vendor and the vendee as to a possible exchange of a small triangle at the northwesterly corner of the parcel proposed to be conveyed for a somewhat larger triangle of the vendor's land adjoining the parcel along the easterly portion of its northerly line. This exchange was suggested in order to enable Tarolli to cut through a new road to connect with the existing private road. The new road, as shown in dotted lines upon the survey, and as shown in a solid line on the subdivision map which had been filed by Tarolli, ran diagonally in a southwesterly direction from the subdivided portion of the tract to the private road and, in so doing, it cut off a small triangular piece at the northwesterly corner of the parcel which the plaintiff had contracted to sell to Westvale. As the trial court said, the negotiations "came to naught" but their significance, as bearing upon the present controversy, is that it was assumed by both parties throughout the negotiations that the private road would remain open permanently; no question was raised about that at any time. The negotiations related solely to the location of a new intersecting road which was to run into the private road, approximately at right angles, north of the parcel proposed to be conveyed. The negotiations for the exchange of the triangular pieces having failed, the conveyance was made of the whole of the parcel, as described in the revised contract of sale and as described in the deed quoted above.

Shortly after the property had been conveyed to the defendant Westvale, it arranged to have a house moved from the Albanese property to the rear part of the newly acquired parcel, close to, and abutting on, the private road. The defendants then undertook to make some minor repairs to the road to improve it as a means of access to the house. The plaintiff asserted that the defendants had no right to use the private road and the present controversy ensued. The plaintiff brought this action for an injunction to prevent the defendant from using the road, and the defendant interposed a counterclaim asking for a declaration of its right to use the road and for an injunction against any interference by the plaintiff with its use.

Upon the facts as outlined above, the trial court found that the defendant had not acquired any easement and granted an injunction in favor of the plaintiff. This appeal followed.

In my opinion, the decision of the court below was contrary to settled principles of real property law.

The settled rule prevailing in virtually every State in the Union is summarized in the 1957 revision of the article on Easements in American Jurisprudence (Vol. 17A, § 38, p. 647) as follows: "Where a conveyance of land calls for a way or street as a boundary and the grantor owns the fee in the land represented as the way or street, he is generally estopped, as against the grantee, to deny that it is a way or street; and an easement therein passes to the grantee by implication of law  *  *  *  In such a case, necessity, or the lack of it, has no bearing, and it is immaterial that the way to which reference is made is not open at the time of the transfer."

The same principle is reiterated in the leading texts on the subject (3 Tiffany on Real Property [3d ed.], § 799, pp. 304–309; 2 Thompson on Real Property, §§ 471–472, pp. 28–32; 3 Powell on Real Property, ¶ 409, pp. 412–413; 2 Washburn on Real Property [6th ed.], § 1238, p. 282; Jones on Easements, § 227, pp. 188 to 190; see, also, Annotation 46 A. L. R. 2d 461; 28 C. J. S., Easements, § 40, pp. 704–705).

The New York law has been settled in accordance with the above-stated principle for more than a century. (*Huttemeier* v. *Albro,* 18 N. Y. 48, affg. 2 Bosw. 546; *Wiggins* v. *McCleary,* 49 N. Y. 346; *Matter of Eleventh Ave.,* 81 N. Y. 436; *Holloway* v. *Southmayd,* 139 N. Y. 390; *Holloway* v. *Delano,* 139 N. Y. 412; *Matter of St. Nicholas Terrace,* 143 N. Y. 621; *Ranscht* v. *Wright,* 9 App. Div. 108, affd. 162 N. Y. 632; *Matter of New York* (*Thirty-first* [*Patterson*] *Ave.*), 152 Misc. 849; *Collins* v. *Barker,* 286 App. Div. 349.)

The fact that the property is described by metes and bounds in addition to being described as bounded by the road does not render the rule inapplicable (*Ranscht* v. *Wright, supra*). The rule applies "although the course and distance are given" (17A Am. Jur., Easements, § 38, p. 647).

Neither is the fact that the description runs along the boundary or side line of the road, rather than in terms along the road itself, of any materiality (*Ranscht* v. *Wright, supra; Matter of ·New York* (*Thirty-first* [*Patterson*] *Ave.*), *supra; Lewisohn* v. *Lansing Co.,* 119 App. Div. 393; *Kenyon* v. *Hookway,* 17 Misc. 452, affd. 21 App. Div. 342).

Neither does the fact that the road is referred to as a private road militate against the application of the rule. The word "private" merely indicates that the road has not been dedicated for public use, but it is not in any way inconsistent with the creation of an easement for the benefit of the grantee as an abutting owner (*Schmidt* v. *Forster,* 99 Pa. Superior Ct. 545).

Neither is the fact that, prior to the time of the conveyance to the defendant, the northerly part of the road leading to Orchard Road had been allowed to become overgrown and had become impassable of any importance. The implication of an easement does not depend upon a showing that the road was currently in use (*Matter of Eleventh Ave.,* 81 N. Y. 436, 446–447, *supra; Kenyon* v. *Hookway,* 17 Misc. 452, affd. 21 App. Div. 342, *supra*). In any event, the controversy in this case relates only to the southerly part of the road running alongside the defendant's premises. The defendant claimed a right of way only over that portion of the road which ran from the northerly line of its premises southerly to Genesee Street. As the trial court found, and the photographs in evidence clearly show, this portion of the road was open and passable at the time of the conveyance to the defendant, and was currently being used by the owner of the abutting property on the other side of the road.

Easements by implication may be of various types: (1) easements by necessity, (2) easements arising upon the severance of the dominant and servient

parts of a single estate, (3) easements by conveyance by reference to a map or plat and (4) the type here involved, easements by description of the premises as bounded on a road or way owned by the grantor. A factor which may be essential for the establishment of one type of easement by implication may not be essential for another. Thus, for example, in order to sustain an easement of a right of way by necessity, it must be shown that the easement is strictly necessary in order to make the property accessible. In order to imply an easement upon a severance of property, one part of which was used for the benefit of another, there must be a showing that the user was open and apparent at the time of the severance (*Jacobson* v. *Luzon Lbr. Co.*, 192 Misc. 183, affd. 276 App. Div. 787, affd. 300 N. Y. 697). As we have seen, neither of these elements is essential for the implication of an easement by virtue of a conveyance of property which is described as bounded by a road or way, the fee of which is owned by the grantor.

The implication of the granting of an easement in a road or way to a purchaser of a lot bounded upon it is based upon a construction of the terms of grant itself (2 Thompson on Real Property, § 472, p. 30). The grantees' rights "depend upon the construction of their deed" (*Haight* v. *Littlefield*, 147 N. Y. 338, 342). "In one sense such an easement is created by express conveyance, since one can construe the deed reference to the bounding street * * * as connoting the created easement. The fact remains, that the easement exists because of the combined effect of a peg-phrase in the conveyance and of the circumstances of the conveyance. It is, therefore, understandable that some courts speak of such an easement as arising from 'implication.' [Citing *Matter of City of New York (Northern Blvd.)*, 258 N. Y. 136]" (3 Powell on Real Property, ¶ 409, pp. 412 to 413).

Some courts reach the same result upon the grounds of estoppel; it is said that the grantor is estopped to deny the existence of the road or way and of the grantee's right to use it (*Collins* v. *Barker*, 286 App. Div. 349, 355, *supra*).

Of course, it must be recognized that, if the parties intended and understood, notwithstanding the description of the property as bounded upon the road or way, that the grantee should not acquire an easement therein, the granting of an easement may not be implied. Upon analysis, it will be found that that is all that is meant by the oft-repeated statement that an easement by implication depends upon the intention of the parties to the conveyance. This statement must be read in the light of the body of established rules of property law which, in effect, provide that an easement is to be implied as a matter of law in certain circumstances and in certain situations. While these rules of law are not inflexible ones, they are controlling in the absence of a showing of a contrary intention. We do not embark in the first instance upon a search for the intention of the parties; under the applicable rules of law, the terms of the grant give rise to a presumed intention. One who asserts that the terms of the grant are not to be given their normal legal effect has the burden of affirmatively establishing that the parties mutually understood or intended that no easement was to be granted (*Collins* v. *Barker*, *supra*). No showing of that kind was made by the plaintiff in this case. There is nothing in the evidence in this case to show that the parties had any mutual understanding that the defendant was not to acquire a right of way in the road.

On the contrary, all the evidence points inescapably in the other direction, and reinforces the implication from the terms of the conveyance. The grantor held the 60-foot strip subject to a binding restriction which prevented him from using it for any purpose other than a road. He was under an express obligation to dedicate the road to the public when the circumstances were

appropriate for such a dedication. As a practical matter, a strip of land 60 feet wide and over one thousand feet in length is not suitable for any use other than a road. Coupled with these facts, there is the extremely significant fact that the grantor gave the grantee a survey of the premises, showing the 60-foot road running alongside the premises. This virtually constituted an express agreement that the grantee would have an easement in the road. The inescapable inference is that both parties understood that the grantee, as an abutting owner, was to have the right to use the road.

We are all in agreement that if the property had been described by reference to a plat or map upon which the road had been shown, an easement would have been implied. The controlling rule was recently restated by this court in the case of *Fiebelkorn* v. *Rogacki* (280 App. Div. 20, 21–22, affd. 305 N. Y. 725) : " The rule of law is that when an owner of property sells lots in reference to a map, which lots abut upon a street as shown on the map, the grantees are entitled to have the land shown as a street left open forever as a street or highway and this is so whether or not it is accepted by the town or municipality as a public highway ".

While the premises in this case were not described by reference to a map, the circumstances make this an a fortiori case. The rationale of the map cases is that, from the fact that the map shows the parcel conveyed as abutting on roads or streets, there arises an obligation on the part of the grantor to dedicate the roads or streets and, if for any reason a dedication does not take place, there arises an obligation to keep the roads or streets open as private roads for the use of the grantee. In our case, at the time of the conveyance, the grantor was under an express obligation to dedicate the 60-foot strip as a public road, by virtue of an agreement which was a matter of record in the chain of title. The conveyance to the defendant was made in the light of that outstanding express obligation, and must be deemed to have been made with reference to it. This, it seems to me, is a much stronger basis for the implication of an easement than a reference to a map upon which a road is shown, without any express statement as to the obligations of the person filing the map.

Finally, as has already been pointed out, the deed in this case was accompanied by a survey, prepared at the grantor's instance, showing the premises conveyed as abutting upon a 60-foot road. This survey must be regarded as a part of the description of the premises conveyed and, so regarding it, it is equivalent to a conveyance by reference to a map showing a road upon which the premises abutted.

Reliance was placed by the court below upon a condemnation case in which the implication of an easement was rejected (*Matter of the City of New York* [*Northern Blvd.*], 258 N. Y. 136). That was a map case and if it constituted a qualification of any rule as to implied easements, it would relate to the map rule rather than to the boundary rule. In any event, the case dealt with a unique set of circumstances. Condemnation proceedings had been instituted by the city for the broadening of a street and the establishment of a boulevard. During the pendency of the condemnation proceedings, the owner of abutting property filed a map showing the lines of the proposed boulevard as well as the lines of the original street. Lots were sold by reference to the map, but both the buyers and the sellers were aware that condemnation proceedings had been brought by the city to condemn the land lying between the old street lines and the proposed new ones, and that the new lines were merely tentative or provisional and were to become effective only when the condemnation proceeding was completed. The city attempted to reduce the amount of the condemnation award by arguing that the land shown on the maps within

the new proposed lines had become subject to private easements in favor of the purchasers of the lots. The court properly rejected this contention and held that no easement had been acquired by the lot purchasers. The case cited bears no resemblance to our case, and cannot be regarded as a precedent for a refusal to sustain an easement under the circumstances of our case.

It was suggested by the plaintiff's counsel that, even if the abutting property owners on the west side of the road had the right to use it and even if the purchasers of subdivision lots to the north on both sides of the road had an easement in the road, the plaintiff still had the right to plant trees or to erect other obstructions along the easterly line of the road, as it ran alongside the defendant's property, and thus to wall off the defendant's property and prevent access to the defendant's property from the road. This envisages an extraordinary situation in which persons rightfully using the road would be barred from turning off on to the defendant's property. If the plaintiff had any such scheme in mind, it was certainly his obligation to disclose it at the time of the conveyance and to insert an express provision in the conveyance denying the grantee access to or from the road upon which its land abutted. It would take very clear language to bring about such an anomalous situation.

Upon the whole record, it must be concluded as a matter of law that the defendant acquired an easement in the road. The judgment appealed from should be reversed and the complaint dismissed and judgment rendered in favor of the defendant, establishing the easement claimed by it.

All concur, except Williams and Halpern, JJ., who dissent and vote for reversal and for dismissal of the complaint in an opinion by Halpern, J., in which Williams, J., concurs. Present — Kimball, J. P., Williams, Bastow, Goldman and Halpern, JJ.

Judgment affirmed, with costs.